Bruce Glenn MILNER, Appellant,

v.

The STATE of Texas, Appellee.

No. 01–06–00283–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

Dec. 14, 2006.

Buddy Stevens, Attorney at Law, Angleton, TX, for Appellant.

Jeri Yenne, Criminal District Attorney, David Bosserman, Assistant Criminal District Attorney, Angleton, TX, for Appellee.

Panel consists of Justices TAFT, KEYES, and HANKS.

## OPINION

EVELYN V. KEYES, Justice.

Appellant, Bruce Glenn Milner, is charged with murder and attempted murder. The trial court set bail at $500,000. Milner filed an application for writ of habeas corpus and bond reduction which the trial court denied. In one point of error, appellant argues that the trial court erred by denying his request to reduce bail.

We affirm.

### Background

The probable-cause complaint stated that appellant shot his wife and mother-in-law behind a Regions Bank and then fled the scene in a gold-colored vehicle. Appellant's wife died from her wounds, but appellant's mother-in-law lived. When police later found appellant driving the gold-colored vehicle, a high-speed chase ensued that resulted in appellant's arrest. Officers found a firearm in the vehicle with a round in the chamber and seven live rounds in the firearm's magazine. The ammunition was described as "hollow point[s]."

The State indicted appellant for murder of his wife, Leza Maddalone, with a deadly weapon. The State also indicted appellant for attempted murder of his mother-in-law, Debra Sanchez, with a deadly weapon. The trial court set appellant's bail at $500,000.

Appellant filed an application for habeas corpus which requested that his bail be reduced. At the bail hearing, appellant stated that his bail was currently set at $500,000. He also testified that he had two other $15,000 bail amounts. After hearing testimony from the parties, the trial court denied appellant's application for habeas corpus relief. Appellant appeals from this order.

### Analysis

The standard of review for reviewing bail settings is whether the trial court abused its discretion. *See Ex parte Rubac*, 611 S.W.2d 848, 849 (Tex.Crim.App. 1981). In the exercise of its discretion, a trial court should consider the following rules in setting a defendant's bail:

1. The bail shall be sufficiently high to give reasonable assurance that the undertaking will be complied with.

2. The power to require bail is not to be so used as to make it an instrument of oppression.

3. The nature of the offense and the circumstances under which it was committed are to be considered.

4. The ability to make bail is to be regarded, and proof may be taken upon this point.

5. The future safety of a victim of the alleged offense and the community shall be considered.

TEX.CODE CRIM. PROC. ANN. art. 17.15 (Vernon 2005); *see Ludwig v. State,* 812 S.W.2d 323, 324 (Tex.Crim.App.1991) (noting that the court is "to be governed in the exercise of [its] discretion by the Constitution and by the [article 17.15 factors]"). The burden of proof is upon a defendant who claims bail is excessive. *Rubac,* 611 S.W.2d at 849; *Ex parte Martinez–Velasco,* 666 S.W.2d 613, 614 (Tex. App.-Houston [1st Dist.] 1984, no pet.). The primary purpose for setting bond is to secure the presence of the defendant in court at his trial. *Ex parte Vasquez,* 558 S.W.2d 477, 479 (Tex.Crim.App.1977); *Ex parte Bonilla,* 742 S.W.2d 743, 744 (Tex. App.-Houston [1st Dist.] 1987, no pet.). The amount of bail should be set sufficiently high to give reasonable assurance that the accused will comply with the undertaking, but should not be set so high as to be an instrument of oppression. *Ex parte Bufkin,* 553 S.W.2d 116, 118 (Tex.Crim. App.1977); *Ex parte Willman,* 695 S.W.2d 752, 753 (Tex.App.-Houston [1st Dist.] 1985, no pet.). Courts should also consider the defendant's work record, family ties, residency, past criminal record, conformity with previous bond conditions, other outstanding bonds, and aggravating factors involved in the offense. *See Rubac,* 611 S.W.2d at 849; *see also Martinez–Velasco,* 666 S.W.2d at 614–15.

In his sole point of error, appellant argues that the evidence was legally insufficient to deny his request to reduce bail and that the trial court abused its discretion in denying appellant's request to reduce bail.[1] To determine whether the trial court abused its discretion, we consider the rules found in article 17.15 of the Texas Code of Criminal Procedure. *See* TEX. CODE CRIM. PROC. ANN. art. 17.15.

## A. Nature of the Offense

The record reflects that the State indicted appellant for intentionally or knowingly causing the death of his wife with a firearm, a first degree felony. *See* TEX. PEN.CODE ANN. § 19.02(b) (Vernon 2003). The offense carries a sentence of 5 to 99 years or life and a fine not to exceed $10,000. *Id.* § 12.32(a), (b) (Vernon 2003). The State also indicted appellant for attempting to intentionally or knowingly cause the death of his mother-in-law with a deadly weapon. Attempted murder is a second degree felony. *Id.* §§ 15.01(a), (d), 19.02(b) (Vernon 2003). The offense of attempted murder carries a sentence of 2 to 20 years and a fine not to exceed $10,000. *Id.* § 12.33(a), (b) (Vernon 2003). The State also included two enhancement paragraphs that could qualify appellant as an habitual offender, thus elevating appellant's punishment range. *See id.* § 12.42(d) (Vernon Supp.2006). In that instance, the minimum sentence appellant could receive, if convicted, is 25 years. *See id.*

In other murder cases, $500,000 for bail has been held not to be excessive. *See Ex parte Davis,* 147 S.W.3d 546 (Tex.App.-Waco 2004, no pet.) (reversing trial court's bail amount of $1,000,000 for murder and rendering bail at $500,000 for one defendant and $750,000 for a co-defendant); *Ex parte White,* 01–02–00480–CR, 2002 WL 1933721 (Tex.App.-Houston [1st Dist.]

---

1. Although appellant argues that the evidence is legally insufficient, we note that we review a bond reduction proceeding under an abuse of discretion standard of review. *See Ex parte Ruiz,* 129 S.W.3d 751, 753 n. 2 (Tex.App.-Houston [1st Dist.] 2004, no pet.) ("We publish this opinion to clarify the standard of review in bond reduction proceedings to be abuse of discretion.").

Aug. 22, 2002, no pet.) (not designated for publication) (affirming the trial court's reduction of bail from $500,000 to $475,000 for defendant charged with murdering his wife); *Ex parte Simpson*, 77 S.W.3d 894 (Tex.App.-Tyler 2002, no pet.) (affirming $600,000 bail for capital murder when appellant charged with brutal and violent crime and posed a threat to community); *Ex parte Chavfull*, 945 S.W.2d 183 (Tex. App.-San Antonio 1997, no pet.) (holding that $750,00 bail is not excessive for defendant charged with murdering an individual with a firearm because violent nature of crime and threat to community).

Here, the nature of the offense reflects that appellant allegedly shot and killed his wife and shot his mother-in-law multiple times, all in front of his children. Based on the serious nature of the crime and the substantial penalty if convicted, the trial court could have reasonably concluded that the nature of the offense did not favor a bail reduction.

### B. Sufficient Bail to Assure Appearance But Not Oppress

Other than living in Harris County for a very short period, appellant has always lived in Brazoria County. At the time of the offense, appellant, age 35, was studying automotive technology at Brazosport College. Prior to taking classes, he worked as a contractor. Appellant has two children, ages six and seven. Appellant's children currently reside at his mother's home in Oyster Creek. Appellant also has additional family members in Brazoria County and a cousin who lives in San Antonio. Appellant owns no real estate and no personal property, such as automobiles, airplanes, or boats. Although appellant previously worked as a contractor, he testified that he owns no tools. Appellant also testified that he had no

bank accounts that contained any funds and no savings accounts.

This evidence indicates that, other than being near his two children and other family members, appellant does not have a reason to remain in Brazoria County, if released on bail. Before his arrest, appellant was not employed, he owns no property in the area, and he has no checking or savings accounts. Before his arrest, appellant led police on a high-speed chase, which demonstrates he could be a flight risk. Thus, the trial court may have concluded that a reasonably high bail is necessary to have assurance that appellant will appear at trial. In addition, the record contains nothing to indicate that the trial court rendered its decision for the purpose of forcing appellant to remain incarcerated pending trial. *See Ex parte Harris*, 733 S.W.2d 712, 714 (Tex.App.-Austin 1987, no pet.) (trial judge stated, "I'd rather see him in jail than to see someone's life taken. . . .").

### C. Ability to make bail

 To show that he is unable to make bail, a defendant generally must show that his funds and his family's funds have been exhausted. *Ex parte Willman*, 695 S.W.2d at 754 (citing *Ex parte Dueitt*, 529 S.W.2d 531, 532 (Tex.Crim.App.1975)); *see also Richardson v. State*, 181 S.W.3d 756, 760 (Tex.App.-Waco 2005, no pet.) (considering funds of appellant's father and brother). Unless he has shown that his funds and those of his family have been exhausted, a defendant must usually show that he made an unsuccessful effort to furnish bail before bail can be determined to be excessive. *Ex parte Willman*, 695 S.W.2d at 754; *see Ex parte Williams*, 467 S.W.2d 433, 434 (Tex.Crim.App.1971). If both the defendant and his family indicate a financial inability to procure a surety bond, the court will not require him "to do

a useless thing." *Ex parte Dueitt*, 529 S.W.2d at 532–33.

 The ability or inability of an accused to make bail, however, even indigency, does not alone control in determining the amount of bail. *Ex parte Charlesworth*, 600 S.W.2d 316, 317 (Tex.Crim.App. 1980); *Ex parte Branch*, 553 S.W.2d 380, 382 (Tex.Crim.App.1977); *Ex parte Hulin*, 31 S.W.3d 754, 759 (Tex.App.-Houston [1st Dist.] 2000, no pet.). If the ability to make bond in a specified amount controlled, the role of the trial court in setting bond would be completely eliminated and the accused would be in the position to determine what his bond should be. *Ex parte Miller*, 631 S.W.2d 825, 827 (Tex.App.-Fort Worth 1982, pet. ref'd).

Here, appellant testified that he owned no real estate and no personal property such as automobiles, airplanes, or boats. He also testified that he had no bank accounts that contained any funds, no savings accounts, and no financial instruments. When the State asked appellant whom he contacted regarding the $500,000 bond, appellant stated, "I haven't contacted anybody." Appellant's mother, Evelyn Jean Morrison, testified that she called a bonding company and learned that she had to post 10 percent of the total bond. She testified that she had no means of acquiring $50,000. She is currently supporting appellant's two children. She and her husband, Carl Morrison, own their home and have a mortgage. She stated that the value of her home is about $70,000 and that she still owes $40,000. She has no other property except some property that they sold in which they are now the note owner. She receives $450 in monthly income on the note. She retired from Dow chemical after 30 years of service and now receives a $3,100 monthly retirement check from Dow before taxes. She owns a 1999 Ford Taurus free and clear, but owes $5,000 on a 1999 Honda Odyssey van. Her husband teaches flight instruction on ultralight airplanes, but he cannot currently give lessons. She has $2,000 in a checking account, but no savings accounts or certificates of deposit. She has a 401k retirement account worth about $90,000.

The evidence shows that appellant himself made no effort to determine whether he could obtain a bond to make bail. Nevertheless, his testimony indicates that he does not have the financial resources to make the bond. Appellant's family does not have the financial resources to pay for the bond in cash, but the trial court may have determined that appellant's mother could obtain a bond in light of the value of her 401k account and that no attempt had been made to determine whether appellant could obtain a bond on the basis of his family's resources. Thus, the trial court could have determined that the evidence supports maintaining the present bail amount. Even if appellant had established that he could not make bail, however, this element would not control over all other considerations. *See Ex parte Charlesworth*, 600 S.W.2d at 317.

### D. Future Safety of Victim and Community and Other Factors

 Finally, article 17.15 of the Code of Criminal Procedure requires that "[t]he future safety of a victim of the alleged offenses and the community shall be considered." TEX.CODE CRIM. PROC. ANN. art. 17.15. Additional factors to consider in reviewing a bond decision include appellant's work record, family ties, length of residency, past criminal record, conformity with the conditions of any previous bond, other outstanding bonds, and aggravating factors involved in the offense. *See Rubac*, 611 S.W.2d at 849–50; *Aviles v. State*, 23 S.W.3d 74, 80 (Tex.App.-Houston [14th Dist.] 2000, pet. ref'd).

Although no specific evidence was introduced, one of appellant's alleged victims, his mother-in-law, could be at risk if appellant makes bail. Also, when appellant's own mother was asked if appellant could live with her and the children if appellant were released on bond, appellant's mother stated, "I've got a lot of conflicting thoughts in my head about that." This evidence supports maintaining the present bail amount.

Moreover, appellant's record and the gravity and nature of the charges against him indicate that he presents a risk to the safety of the community. We have already considered what little information the record provides on appellant's work record, family ties, and length of residency. Thus, we turn to appellant's past criminal record. Appellant admitted that he was convicted of burglary and received a seven-year sentence, but he had to serve only four years. Appellant admitted that he went to the penitentiary for a burglary that occurred in Brazoria County. He also went to prison for aggravated assault that occurred in Harris County.[2] He recalled being arrested for making a terroristic threat against his mother in 1989. He also admitted that he had been arrested twice for unlawfully carrying a weapon, once in Harris County and once in Brazoria County. He was convicted for possession of marihuana in 2000 in Houston. He also was arrested in 2003 for terroristic threats, an offense of which he was acquitted. Prior to the time the current indictment alleges appellant murdered his wife, appellant's wife had obtained a protective order against appellant. Appellant admitted that he was also charged with evading arrest after the alleged shooting of his wife. None of these factors favors a bail reduction.

Appellant did present evidence that he had complied with past conditions of bail from a charge of terroristic threat in which the jury found him not guilty. He also has a total of $30,000 in bail for two other offenses. Appellant's past compliance with his conditions of bail and the additional $30,000 in bail would favor a reduction in bail. However, based on the totality of these other factors, the trial court could have determined that the evidence supports maintaining the present bail amount.

### Conclusion

Given appellant's extensive criminal history, the lack of evidence of his connections to Brazoria county, the violent nature of the alleged crimes, appellant's potential as a flight risk, and the safety of the victim, appellant's children, and the community, we conclude that the trial court did not abuse its discretion in refusing to reduce bail.

We affirm the order of the trial court.

---

**2.** The State filed a notice of supplemental pleadings alleging that appellant had been previously convicted of aggravated assault and burglary of a building.