02-11-200,201&202-CR









 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

NOS. 02-11-00200-CR

         02-11-00201-CR

         02-11-00202-CR


 
 
 Ex parte John Raybon
 
 
  
 
 
  
 
 
 
 
  
  
 
 
 
 
  
 
 
  
 
 
  
 
 


 

----------

 

FROM THE 89th
District Court OF Wichita COUNTY

----------

 

MEMORANDUM
OPINION[1]

----------

 

I. Introduction

Appellant
John Raybon was charged with the felony offenses of obstruction or retaliation,
unlawful carrying of a weapon on a licensed premise, and attempted aggravated
assault.  The trial court set pre-trial bail at $100,000, $10,000, and $50,000,
respectively, for a total bail amount of $160,000.  Raybon filed a pre-trial
application for writ of habeas corpus in each case, seeking a reduction of the bail
amount.  See Tex. Code Crim. Proc. art. 11.24 (West 2005).  The trial
court denied relief, and Raybon appealed.  See Tex. R. App. P. 31.  We
will affirm.

II.  Factual and Procedural Background

          At the hearing on Raybon’s
application for writ of habeas corpus, Kevin Taylor testified that he is the
manager of an AT&T store in Wichita Falls.  He testified that Raybon had
brought his laptop into the store for repairs and that Taylor had dropped it, causing
a dent in the laptop.  At some point during that visit, Raybon told Taylor that
he always carries a gun and that he needed to use it on his wife, who was
divorcing him.  Following company policy, Taylor reported the damage to the
company’s claims department, at which point, according to Taylor, “it was out
of our hands.”  Raybon began calling the store about the damage to his laptop,
often using an abrasive and demanding tone, cursing, and yelling.  He left Taylor
voice messages threatening to “take it to the media” and to “take it how ever
far he needed to take it.”  Taylor testified that Raybon used “veiled threats”
but that he never directly threatened to hurt or kill Taylor.

Based
on Raybon’s threatening behavior, Taylor hired an off-duty police officer as
security for the store during business hours.  One day, Raybon went to the
store to have his cell phones repaired.  The store had banned Raybon as a
customer based on past dealings with him, so the off-duty officer escorted him
outside.  Once outside, Raybon “gestured to reach for [a gun]” as Taylor
watched from inside the store.   Taylor did not see the gun, but he later
learned that Raybon was carrying a gun in the area that he had reached toward. 
Taylor testified that he is “[a]bsolutely” concerned for his own safety if
Raybon’s bail is reduced.

Jake
Bussey, who works at Cellular World, testified that Raybon went to Bussey’s
store to get his two cell phones fixed and, while there, told Bussey that the
situation with his phones was “all because of [Taylor].”  Raybon had taken a photograph
of Taylor and showed it to Bussey.

  The
State introduced in evidence Raybon’s prior criminal history, which includes five
arrests and two convictions for battery/domestic violence between 1997 and 2009,
and a protective order from Oklahoma based on harassing and threatening
telephone communication.  Raybon testified briefly about the protective order;
he said that it stemmed from an argument over a haircut.  He admitted that
after the protective order was filed, he purchased a gun.

The
trial court took judicial notice of the probable cause affidavit for each case. 
The probable cause affidavit for the attempted aggravated assault charge states
that, on January 8, 2011, Raybon went to the AT&T store and threatened
Taylor by stating, “I’ll get my tech 9 and come back and take care of this.”[2] 
The affidavit stated that, on January 28, 2011, Raybon returned to the store and
was escorted outside by an off-duty police officer who had been hired as
security at the store because of Raybon.  The off-duty officer saw the butt of
a handgun in Raybon’s jacket pocket.  The officer reached for the gun, and
Raybon pulled away, stating, “I have a gun.”  He appeared to be reaching for
the gun.  Another officer arrived on the scene and helped control Raybon.  The
officers found a loaded 9mm handgun on Raybon.

The
probable cause affidavit for the obstruction or retaliation charge states that
after Raybon was arrested in front of the AT&T store with a gun in his
possession, the store disconnected his cellular service.  Subsequently, on
January 31, 2011, Raybon called Lane Atkin, an employee at the AT&T store;
Raybon was very upset that his cellular service had been disconnected.  Atkin
explained that the store no longer wished to do business with him, and Raybon
told Atkin, “I’m going to the police department to get my gun back, then I’m
going to make a move to destroy your life.”

The
probable cause affidavit for the unlawful carrying of weapons on a licensed
premise charge states that, on February 4, 2011, Raybon was arrested at a Fast
Eddy’s under a warrant for making a terroristic threat.  The arresting officer
found a switchblade knife in Raybon’s jacket pocket.

After
hearing all of the testimony and reviewing Raybon’s criminal record and the
probable cause affidavits, the trial court denied the application for writ of
habeas corpus.  The trial court explained that Raybon has “a great deal of
pent-up anger” and that, for the safety of the victims and the public in
general, the bail amount should not be lowered.

III.  Standard of Review

We
review the trial court’s ruling on the setting of bail under an abuse of
discretion standard of review.  See Ex parte Rubac, 611 S.W.2d 848, 850
(Tex. Crim. App. [Panel Op.] 1981); Ex parte Scott, 122 S.W.3d 866, 868
(Tex. App.––Fort Worth 2003, no pet.); see also Tex. Code Crim. Proc.
Ann. art. 17.15 (West 2005) (giving trial court discretion to set bail amount).

To
determine whether a trial court abused its discretion, we must decide whether
the trial court acted without reference to any guiding rules or principles; in
other words, we must decide whether the trial court’s action was arbitrary or
unreasonable. Montgomery v. State, 810 S.W.2d 372, 380 (Tex. Crim. App.
1990).  Merely because a trial court may decide a matter within its discretion
in a different manner than an appellate court would in a similar circumstance
does not demonstrate that an abuse of discretion has occurred.  Id.

IV.  Bail Reduction

The
primary purpose of a bail bond is to secure the presence of the defendant at
trial on the offense charged.  Ex parte Vasquez, 558 S.W.2d 477, 479
(Tex. Crim. App. 1977); Scott, 122 S.W.3d at 868.  Accordingly, bail
should be set high enough to give reasonable assurance that the defendant will
appear at trial, but it should not operate as an instrument of oppression.  Scott,
122 S.W.3d at 868.  

    
     Article 17.15 of the Texas Code of Criminal Procedure sets forth the
following criteria for establishing the amount of bail: 

1. The bail shall be
sufficiently high to give reasonable assurance that the undertaking will be
complied with.

 

2. The power to
require bail is not to be so used as to make it an instrument of oppression.

 

3. The nature of the
offense and the circumstances under which it was committed are to be
considered.

 

4. The ability to
make bail is to be regarded, and proof may be taken upon this point.

 

5. The future safety
of a victim of the alleged offense and the community shall be considered.

 

Tex.
Code Crim. Proc. Ann. art. 17.15.  

In
addition to these factors, the court should also weigh the following factors in
determining the amount of the bail:  (1) the accused’s work record; (2) the
accused’s family ties; (3) the accused’s length of residency; (4) the accused’s
prior criminal record, if any; (5) the accused’s conformity with the conditions
of any previous bond; (6) the existence of outstanding bonds, if any; and (7)
aggravating circumstances alleged to have been involved in the charged
offense.  Rubac, 611 S.W.2d at 849–50; Scott, 122 S.W.3d at 869. 
The defendant bears the burden to show that he is entitled to a reduction in
bail.  Rubac, 611 S.W.2d at 849; Maldonado v. State, 999 S.W.2d
91, 97 (Tex. App.––Houston [14th Dist.] 1999, pet. ref’d).

A.  The Nature of the Offenses and the
Potential Sentences

The nature of the offenses and the
circumstances surrounding the offenses are primary factors in determining what
constitutes a reasonable bond.  See Tex. Code Crim. Proc. Ann. art.
17.15(3); Ex parte Davila, 623 S.W.2d 408, 410 (Tex. Crim. App. [Panel
Op.] 1981).  In considering the nature of the offenses, it is proper to
consider the possible punishments.  Vasquez, 558 S.W.2d at 479–80; Ex
parte Hunt, 138 S.W.3d 503, 506 (Tex. App.––Fort Worth 2004, pet. ref’d). 
When the nature of the offense is serious and involves aggravating factors, a
lengthy prison sentence following trial is probable.  Scott, 122 S.W.3d
at 869.  Therefore, pretrial bond must be set sufficiently high to secure the
presence of the accused at trial because the accused’s reaction to the prospect
of a lengthy sentence might be to not appear.  Id.

Here,
Raybon is charged with three third-degree felonies.  See Tex. Penal Code
Ann. §§ 22.02(b), 36.06(c), 46.02(c) (West 2011); see also id. §  15.01(d)
(West 2011).  He faces a punishment of two to ten years for each offense. 
See id. § 12.34 (West 2011).  As we have detailed above, the
circumstances of the offenses, including the threats to the safety of the AT&T
store’s employees, are quite serious.

B.  Ability to Make Bail

The accused’s ability to make bail is merely
one factor to be considered in determining the appropriate amount of bail.  See
Tex. Code Crim. Proc. Ann. art. 17.15(4); Scott, 122 S.W.3d at 870. 
Simply because a defendant cannot meet the bail set by the trial court does not
automatically render it excessive.  Scott, 122 S.W.3d at 870.  “If the
ability to make bond in a specified amount controlled, then the role of the
trial court in setting bond would be completely eliminated, and the accused
would be in the unique posture of determining what his bond should be.”  Id.


          The
record shows that the trial court declared Raybon indigent and appointed
counsel to represent him.  Raybon testified that he is going through a divorce
and that he is in the middle of a bankruptcy.  According to Raybon, he and his
wife have “a couple of TVs, a new bed,” but everything else was sold to cover
the cost of the bankruptcy.  He had purchased a Las Vegas home for $360,000,
but at the time of the hearing, it was in foreclosure.  Raybon said that he has
approximately $800 in a bank account and that he had recently purchased a car
for $500 that he could sell, although he needs it to get to court.

Raybon
did not specify, either in his motion or at the hearing, an amount of bail that
he would be able to pay, nor did he present any evidence about whether his
family has any ability to help him make bail.  See Milner v. State, 263
S.W.3d 146, 149 (Tex. App.—Houston [1st Dist.] 2006, no pet.) (“To show that he
is unable to make bail, a defendant generally must show that his funds and his
family’s funds have been exhausted.”).  He did not explain what efforts, if
any, were made to make the $160,000 bail.  See id. (finding no abuse of
discretion absent, among other things, evidence of defendant’s and his family’s
assets and attempts to make bond).  

C. 
Safety of the Victim and the Community

          Regarding
the safety of the victim and the community, Taylor explained that he is
concerned for his own safety if Raybon makes bail.  Taylor explained, “I don’t
have a doubt in my mind that he would come after me in some sense.”  The
probable cause affidavit for obstruction or retaliation states that Akin feels
that Raybon is dangerous and has the means to carry out the threats he made. 
According to the affidavit, Akin fears imminent serious bodily injury and death
for himself and other employees of his business.

D. 
Community and Family Ties

Raybon
testified that he grew up near Wichita Falls in Burkburnett.  At some point, he
moved to Nevada, where he lived for at least fourteen years; he briefly
returned to Burkburnett before moving with his wife to Durant, Oklahoma for
several months in 2009.  He returned to Burkburnett in 2009.  His son, four
grandchildren, aunt, and uncle live in Wichita County.  When asked where he
would live locally, he said he was “thinking very seriously that [his] uncle
would let [him] stay at his place.”  However, Raybon admitted that he had
spoken with his uncle several times while in jail and had not yet asked if he
could live with him.

E.  Prior
Convictions

Raybon’s
criminal history includes five arrests and two convictions for battery/domestic
violence between 1997 and 2009, as well as a protective order from Oklahoma
based on harassing and threatening telephone communication.  The trial court
was permitted to take this history into consideration.  See Rubac, 611
S.W.2d at 849–50.  

F. 
No Abuse of Discretion

Affording
due deference to the trial court’s ruling and considering the nature of the
offenses, Raybon’s history of violence, and the safety of the victims and the
community, we hold that Raybon has failed to demonstrate that the bail amounts
are excessive or that the trial court abused its discretion by refusing to
lower the bail amounts.  See Rubac, 611 S.W.2d at 850; Scott, 122
S.W.3d at 868.

V.  Conclusion

Having
determined that the trial court did not abuse its discretion, we affirm the
trial court’s orders denying his applications for writs of habeas corpus.

 

 

PER CURIAM

 

PANEL: 
WALKER,
MEIER, and GABRIEL, JJ.

 

DO
NOT PUBLISH

Tex.
R. App. P. 47.2(b)

 

DELIVERED:  August 4, 2011









[1]See Tex. R. App. P. 47.4.





[2]Taylor testified that
Raybon never made this comment and that Taylor never told an officer that Raybon
made that comment.