

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-14-00031-CR

JONATHAN ALI CHTAY, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 196th District Court
Hunt County, Texas
Trial Court No. 22,939

Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Justice Carter

## MEMORANDUM OPINION

In 2005, Jonathan Ali Chtay pled guilty to the offense of misapplication of construction trust fund money in an amount of $500.00 or more, with intent to defraud. Pursuant to a negotiated plea agreement, Chtay was placed on deferred adjudication community supervision for a period of ten years. On December 4, 2013, (1) Chtay's guilt was adjudicated, (2) he was (a) sentenced to ten years' imprisonment, (b) fined $10,000.00, and (c) ordered to pay court costs, (3) the sentence was suspended, (4) Chtay was again placed on community supervision for ten years, and (5) the trial court required Chtay to serve 180 days in jail as a condition of his community supervision. On appeal,[1] Chtay argues that the trial court erred in failing to reduce his $75,000.00 surety bond pending appeal.[2]

Texas law provides that a defendant may not be "released on bail pending appeal" if the punishment equals or exceeds ten years' confinement. TEX. CODE CRIM. PROC. ANN. art.

---

[1]Chtay pled guilty in 2005 to two separate charges misapplication of trust fund money and theft of property valued at $20,000 or more but less than $100,000.00. On December 4, his deferred adjudication community supervision was revoked, and he was adjudicated guilty, under separate cause numbers, of both charges. He has appealed from the trial court's decision to revoke his community supervision and proceed to adjudication in the misapplication of trust fund money case under our cause number 06-14-00018-CR and in the theft of property case under our cause number 06-14-00019-CR. Both of these matters are currently pending before this Court. In addition, Chtay has appealed from the trial court's decisions regarding his bond pending appeal in each of these matters. This opinion resolves Chtay's bond appeal related to the misapplication of trust fund money case, and his bond appeal related to the theft of property case is disposed of by our contemporaneously issued opinion in our cause number 06-14-00032-CR.

[2]Chtay also argues that the bond conditions imposed in this case are unreasonable. However, the record reveals that there are no bond conditions. Chtay's arguments related to unreasonable bond conditions instead address the trial court's modification to the terms and conditions of his community supervision. However, when a defendant is placed on community supervision and appeals the conviction, the terms of community supervision do not commence until the trial court clerk receives the appellate mandate. *Surety Corp. of Am. v. State*, 550 S.W.2d 689, 690 (Tex. Crim. App. 1977); *Humphries v. State*, 261 S.W.3d 144, 146 (Tex. App.—San Antonio 2008, pet. ref'd); *Goodson v. State*, 221 S.W.3d 303, 305 (Tex. App.—Fort Worth 2007, no pet.); *McConnell v. State*, 34 S.W.3d 27, 30 (Tex. App.—Tyler 2000, no pet).

44.04(b) (West 2006). However, "those who are placed on ten years' community supervision may seek release on bail pending appeal."[3] *Lebo v. State*, 90 S.W.3d 324, 330 (Tex. Crim. App. 2002); *see Werner v. State*, Nos. 01-11-00464-CR & 01-11-00465-CR, 2013 WL 1352140, at **1–2 (Tex. App.—Houston [1st Dist.] Apr. 4, 2013, no pet.). We review a trial court's decision setting bond pending appeal for an abuse of discretion. *Ex parte Dueitt*, 529 S.W.2d 531, 532 (Tex. Crim. App. 1975); *Davis v. State*, 71 S.W.3d 844, 845–46 (Tex. App.—Texarkana 2002, no pet.). It is Chtay's burden to show that the amount of bond is excessive. *See Ex parte Benefield*, 403 S.W.3d 240, 242 (Tex. Crim. App. 2013) (Cochran, J., concurring); *Ex parte Rubac*, 611 S.W.2d 848, 849 (Tex. Crim. App. [Panel Op.] 1981).

Chtay admits that he can make one $75,000.00 surety bond. However, according to Chtay, the trial court should have further lowered the bond amount in this case because it also set a $75,000.00 bond pending appeal in a companion case on the same date, and Chtay contends that he cannot afford to make bond payments totaling $150,000.00. In the companion case, the trial court found that Chtay was guilty of theft of property valued at $20,000.00 or more but less than $100,000.00. The trial court sentenced Chtay to seven years' imprisonment, Chtay appealed his conviction, and the trial court also set Chtay's surety bond pending appeal in that

---

[3]However, the trial court has authority either to permit or to deny an appellate bond. TEX. CODE CRIM. PROC. ANN. art. 44.04(c) (West 2006). The court may deny bond pending appeal "if there exists good cause to believe that the defendant w[ill] not appear when his conviction bec[omes] final or is likely to commit another offense while on bail." *Id.* After a hearing, the trial court made both findings contained in Article 44.04(c) and initially denied Chtay's appellate bond. *See id*. Chtay appealed the initial denial of a bond pending appeal. While the bond appeal was pending, the trial court entered an order under authority of Article 44.04(d) setting Chtay's bond at $75,000.00 cash or surety. *See* TEX. CODE CRIM. PROC. ANN. art. 44.04(d) (West 2006).

case at $75,000.00. Due to the nature of Chtay's argument, we will discuss the trial court's decision in setting two $75,000.00 appellate bonds.

Article 17.15 of the Texas Code of Criminal Procedure provides,

> The amount of bail to be required in any case is to be regulated by the court, judge, magistrate or officer taking the bail; they are to be governed in the exercise of this discretion by the Constitution and by the following rules:
>
> 1. The bail shall be sufficiently high to give reasonable assurance that the undertaking will be complied with.
>
> 2. The power to require bail is not to be so used as to make it an instrument of oppression.
>
> 3. The nature of the offense and the circumstances under which it was committed are to be considered.
>
> 4. The ability to make bail is to be regarded, and proof may be taken upon this point.
>
> 5. The future safety of a victim of the alleged offense and the community shall be considered.

TEX. CODE CRIM. PROC. ANN. art. 17.15 (West 2005).

In making its decision on the appellate bond in this case, the trial court (1) considered Chtay's sentence of imprisonment in the companion case and (2) took judicial notice of its entire file, which we believe demonstrates the reason behind the court's ruling. In evaluating what constitutes reasonable bail pending appeal, "primary factors," such as the nature of the offense and length of the sentence, should be considered. *Rubac*, 611 S.W.2d at 849. At first glance, it appears that the nonviolent[4] nature of the underlying offenses and the trial court's sentences

---

[4]We note that the State's motion to proceed to adjudication alleged that Chtay caused bodily injury to Sherrie Gibbs, the mother of his seventeen-month-old daughter, when he hit "her with the back of his right hand across the left side

4

could favor a further lowering of the appellate bond in this case. Yet, in addition to the primary factors, ability to make bond, existence of a prior criminal record, work record, family ties, length of residency, conformity with previous bond conditions, aggravating factors, and other outstanding bonds are also relevant factors. *Id.* at 849–50. Here, the record indicates that Chtay has the ability to make both bonds and that he has no real ties to the community.

"To show that he is unable to make bail, a defendant generally must show that his funds and his family's funds have been exhausted." *Milner v. State*, 263 S.W.3d 146, 149 (Tex. App.—Houston [1st Dist.] 2006, no pet.).[5] In 2005, Chtay began working for HDD Rotary Sales, LLC, as a mud logger. Within three years, he was promoted to the position of directional driller. By the end of 2009, Chtay became an oilfield operations manager, for which he was well

---

of her face." Although "future safety of a victim of the alleged offense" may be considered in determining the amount of bail under Article 17.15(5) of the Texas Code of Criminal Procedure, the term "victim" does not "cover anyone not actually a complainant in the charged offense." TEX. CODE CRIM. PROC. ANN. art. 17.15(5); *Ludwig v. State*, 812 S.W.2d 323, 325 (Tex. Crim. App. 1991).

However, the trial court was concerned that Chtay might commit another offense while on bail. At the hearing on the State's motion to proceed to adjudication, Gibbs testified that (1) she went to a bar after a fight with Chtay, (2) returned home drunk, (3) continued arguing with Chtay, (4) punched him in the chest, and (5) kicked him in the testicles. Gibbs testified, "[Chtay] reached up and defended himself by blocking himself, and I fell to the floor." After the incident, Chtay left and Gibbs called her parents to pick her up.

Gibbs' parents retrieved Gibbs and the child and took them to their home. They called the Montgomery County Sheriff's Department after Gibbs claimed that Chtay had hit her in the face. Gibbs testified that Chtay did not hit her and that she lied to her parents because she was concerned about who would be awarded custody of the child in case of a breakup with Chtay.

Deputy Luis Macais, responded to the call made by Gibbs' parents. He testified that Gibbs was crying, was "very shaken up," and "had dried blood around her lips . . . [and] scratch marks on her chest area and right elbow." Gibbs testified that all of her injuries were a result of her fall after Chtay's protective block and that her drunken statement to Macais was also a lie. She explained, "I had already told my parents one story, and it was quite embarrassing when I unfortunately stuck with it." Gibbs later signed an affidavit of nonprosecution. Notwithstanding Gibbs' testimony, the trial court found that Chtay hit Gibbs.

[5]In 2005, the trial court found that Chtay was indigent and appointed counsel to represent him. While the court also appointed counsel to represent him in 2013, it appears that Chtay had utilized the services of hired counsel as early as 2010.

5

compensated. During Chtay's revocation hearing, his community supervision officer, Kristina Stinnett, testified that Chtay makes more than $100,000.00 per year.

By January 4, 2011, Chtay had repaid all of the $81,389.34 in restitution that he was ordered to pay as a condition of his community supervision in the companion case. On October 31, 2013, following his arrest on the State's motion to proceed to adjudication, Chtay posted a $25,000.00 surety bond in this case and another $100,000.00 surety bond in the companion case. At the hearing on Chtay's motion to further reduce bond in both cases, Chtay testified that he had been unable to work since he was incarcerated on the companion case and had not been able to make the appellate bond in that case, which had originally been set at $350,000.00. Chtay testified that he could obtain a one-month advance in salary if he was released from confinement and that, while it would be very difficult to make a $100,000.00 bond, he would be able to post a single $75,000.00 bond.

The record demonstrates that a $75,000.00 surety bond would only require a ten percent up-front payment. Since Chtay made over $100,000.00 per year, his one-month salary advance would cover the ten percent payment required on one of the bonds. Chtay also testified (1) that he had $20,000.00 left, one-half in cash and the other one-half in holdings,[6] and (2) that he co-owned land with his mother that was worth approximately $10,000.00 to $12,000.00.[7]

Considering the record of Chtay's employment, his ability to repay a considerable amount of restitution, his recent ability to make a total of $125,000.00 in surety bonds, the

---

[6]Chtay later testified that he had only $5,000.00 left in cash.

[7]Testimony from the revocation hearing revealed that Chtay also owned a recreational vehicle.

amount of the one-month salary advance he could obtain, and his testimony that he had $20,000.00 left, one-half of which was cash, we find that Chtay failed to meet his burden to show that he would be unable to make the two $75,000.00 appellate bonds as ordered.

Moreover, evidence in the record supports the trial court's obvious concern that Chtay might abscond absent two bonds pending appeal in the amount of $75,000.00 each. "The primary objective of the appeal bond is to secure appellant's apprehension if his conviction is subsequently affirmed." *Rubac*, 611 S.W.2d at 849. The record indicates that Chtay did not have any significant community ties to Hunt County.

On April 29, 2009, Chtay was granted permission to move outside the jurisdiction of Hunt County to Montgomery County, Texas, provided that he maintain contact with his Hunt County Community Supervision Officer (CSO) and report to the CSO in person when requested. The first condition of Chtay's community supervision required that he not violate any law. On November 13, 2009, Chtay's CSO reported the following violation of both the court's order and the first condition of his community supervision:

> (DWLS, Criminal Trespassing, etc.) **Class C; Speeding, Fail to Change Address On Driver's License, Violate Promise to Appear & Failure to Appear, The defendant has 4 warrants in Colleyville for offenses . . . . The defendant was instructed to return to the Hunt County CSCD on 10/30/2009 to make a payment and bring in employment verification, the defendant failed to do so.**

On October 22, 2010, Chtay's CSO reported that Chtay, in violation of the seventh term of his community supervision, failed to report a change of address. The report further indicated that the community supervision office could not verify the address of his residence. The trial court was also informed that Chtay's employment as an oilfield operations manager often

7

required him to travel outside the state. On November 9, 2010, the trial court amended Chtay's conditions of community supervision and (1) required him to maintain a verifiable residence in Hunt County, (2) required him to report to the Hunt County community supervision office as required by the CSO, and (3) prohibited him from leaving Hunt County without first obtaining written permission from his CSO.

On October 25, 2013, the State filed a motion to proceed to adjudication. On November 25, 2013, Chtay apprised the trial court that "his bank is in Rockwall. His family lives in Dallas. He has a job in Conroe that he works at and travels." At the hearing on the motion to proceed to adjudication, Sherrie Gibbs, Chtay's fiancée, testified that Chtay had a residence in Montgomery County, Texas, and in North Dakota. According to Gibbs, Chtay claimed his late grandfather's recreational vehicle (RV) as his required Hunt County residence. She testified that they stayed in the RV one or two times a month "when [Chtay] would come back to report for probation." Gibbs could not remember the name of the park where the RV was located.

At the hearing on the State's motion to proceed to adjudication, Chtay told the trial court that his residence was in Hunt County and showed the court his driver's license, which contained a Hunt County address. However, at the bond hearing, Chtay asked that he be allowed to live in Montgomery County. In an affidavit filed with the trial court, Chtay averred (1) that his permanent place of residence was in Montgomery County, Texas, (2) that his employer, HDD Rotary Sales, LLC, was located both in Montgomery Coounty and in Conroe, Texas, (3) that his

8

employment as an oilfield operations manager required him to travel outside of Texas and "as far away as North Dakota."

The record shows that Chtay travelled often and had an out-of-state residence. Chtay did not appear to have ties to Hunt County beyond his claim that his late grandfather's RV was his required Hunt County residence. Chtay's CSO had previously reported that he failed to report a change of address and that his residence could not be verified. The CSO had also reported that Chtay violated a promise to appear.

In light of these facts, we cannot say that the trial court abused its discretion in setting the bond amount at $75,000.00 cash or surety, even though it had set another $75,000.00 bond in the companion case. Therefore, we affirm the trial court's judgment.

Jack Carter
Justice

Date Submitted:     May 20, 2014
Date Decided:      July 22, 2014

Do Not Publish