

## Fourth Court of Appeals
### San Antonio, Texas

### MEMORANDUM OPINION

No. 04-20-00425-CR

**EX PARTE DAVID DELGADO**

From the 25th Judicial District Court, Guadalupe County, Texas
Trial Court No. 20-1651-CV-A
Honorable Jessica Crawford, Judge Presiding

Opinion by:      Liza A. Rodriguez, Justice

Sitting:         Patricia O. Alvarez, Justice
                 Irene Rios, Justice
                 Liza A. Rodriguez, Justice

Delivered and Filed: February 10, 2021

AFFIRMED

David Delgado is charged with the third degree felony offense of repeated violation of a

protective order. *See* TEX. PENAL CODE ANN. § 25.072. This is an accelerated appeal from the

trial court's order denying Delgado's pre-trial habeas corpus application seeking a reduction in the

amount of his bail. We affirm the trial court's order.

### BACKGROUND

On December 30, 2019, the trial court issued a temporary protective order against Delgado

for the protection of his wife Bethany and daughter S.D. Delgado was served with a copy of the

order on January 2, 2020. One month later, on February 2, 2020, Delgado was arrested for

violating the temporary protective order. On February 12, 2020, the trial court entered a final

protective order containing a finding of domestic violence. The protective order extends through December 30, 2021.

Delgado was arrested again on March 31, 2020 for violating the protective order. Delgado was subsequently charged with and arrested for the felony offense of repeated violation of a court order two or more times within a twelve-month period. *See id.* He was arrested on that felony charge on June 18, 2020 and a $150,000 surety bond was set. A few weeks later, on July 8, 2020, Delgado was arrested for coming within 500 feet of Bethany's residence in violation of the protective order; bond for that offense was set at $75,000. The State later combined all of the protective order violations alleged against Delgado in a felony indictment under section 25.072. Delgado is awaiting trial under a combined bond amount of $575,000. He filed an application for a writ of habeas corpus seeking a reduction of the total bond amount. After a hearing, the trial court denied relief. Delgado appealed.

## DISCUSSION

In a single issue, Delgado asserts the amount of bail is excessive and being used as a punishment to inappropriately keep him in jail until trial.

### Standard of Review

We review a trial court's pre-trial bail determination for an abuse of discretion. *Ex parte Gonzalez*, 383 S.W.3d 160, 161 (Tex. App.—San Antonio 2012, pet. ref'd) (citing *Ex parte Rubac*, 611 S.W.2d 848, 850 (Tex. Crim. App. [Panel Op.] 1981)). A trial court abuses its discretion by acting arbitrarily or unreasonably, without reference to any guiding rules or principles. *Id.* We will reverse the trial court's order only if it is outside the zone of reasonable disagreement. *Id.* Merely because we may have decided the matter differently than the trial court does not constitute an abuse of discretion. *Id.*

*Applicable Law*

Excessive bail is prohibited by our federal and state constitutions, as well as the Texas Code of Criminal Procedure. U.S. CONST. amends. VIII, XIV; TEX. CONST. art. I, §§ 11, 13; TEX. CODE CRIM. PROC. ANN. art. 17.15. Bail should not be used as an instrument of oppression; the primary purpose of bail is to secure the defendant's appearance at trial. *Ex parte Rubac*, 611 S.W.2d 848, 850 (Tex. Crim. App. [Panel Op.] 1981); *Gonzalez*, 383 S.W.3d at 161 (citing *Ex parte Rodriguez*, 595 S.W.2d 549, 550 (Tex. Crim. App. [Panel Op.] 1980)). The amount of bail should be set sufficiently high to provide reasonable assurance the defendant will appear for trial, but should not be set so high that it becomes an instrument of oppression. *Ex parte Bufkin*, 553 S.W.2d 116, 118 (Tex. Crim. App. 1977). A defendant bears the burden to demonstrate that the amount of bail is excessive. *Gonzalez*, 383 S.W.3d at 161; *Ex parte Rubac*, 611 S.W.2d at 849.

The Texas legislature has provided a guideline for courts to follow in setting pretrial bail:

1. The bail shall be sufficiently high to give reasonable assurance that the undertaking will be complied with.

2. The power to require bail is not to be so used as to make it an instrument of oppression.

3. The nature of the offense and the circumstances under which it was committed are to be considered.

4. The ability to make bail is to be regarded, and proof may be taken upon this point.

5. The future safety of a victim of the alleged offense and the community shall be considered.

TEX. CODE CRIM. PROC. ANN. art. 17.15.

The Court of Criminal Appeals has added additional factors for courts to consider in determining what constitutes reasonable bail under the circumstances: (1) the nature of the charged offense and length of the potential sentence; (2) the defendant's ties to the community, including

family ties; (3) the defendant's length of residency; (4) the defendant's employment history; (5) the defendant's criminal history; (6) the existence of previous bonds against the defendant and his compliance with conditions of those bonds; and (7) any aggravating circumstances involved in the charged offense. *Ex parte Rubac*, 622 S.W.3d at 849-50; *Gonzalez*, 383 S.W.3d at 162. On appeal, Delgado bears the burden to demonstrate his bail is excessive in light of these considerations. *Ex parte Nimnicht*, 467 S.W.3d 64, 66 (Tex. App.—San Antonio 2015, no pet.).

***Evidence at the Bond Hearing***

Two witnesses testified at the hearing on Delgado's writ application to reduce his bail. Delgado presented the testimony of New Braunfels Police Detective Edward "Trey" Wahrmund. Detective Wahrmund was unable to provide any information regarding the July 8, 2020 incident because he was not the arresting officer and was not called to the scene. The detective did provide a probable cause affidavit in connection with Delgado's arrest for repeatedly violating the protective order in June 2020. With respect to violation of a protective order for breaching a distance restriction, Wahrmund testified he would measure from a beginning point to an end point in accordance with "the guidelines set in the protective order itself." He noted that the protective order in this case does not specify the end point "to the building," so he would end his measurement at the protected person's "property line."

The State called Bethany Delgado, who testified that she is the wife of Delgado. She filed a divorce petition which was pending at the time of the hearing. She obtained a family violence protective order in connection with the divorce. Bethany testified Delgado has substance abuse issues arising from his consumption of excessive alcohol and illegal drugs, including marijuana, cocaine, and "pills." She stated Delgado became aggressive after drinking alcohol and she was "always worried that it was going to elevate or get out of control and he was going to do something reckless or dangerous or put himself or our family in danger." Bethany expressed concern about

Delgado being released from jail on bond because "he doesn't respect the protective order at all."

She stated Delgado had violated the protective order "23 documented times." Bethany continued,

> His contact is threatening, it's desperate, it's delusional, and all of those things are scary. I am concerned for my safety and my daughter's safety. He has guns. I don't know where the guns are. He's misused guns in my presence and my daughter's presence. He's been physically aggressive, but I do have some concerns. [sic] I don't believe he's in control of himself. I think he continues to abuse drugs and alcohol when he has access.

Bethany later clarified that she thought Delgado's younger brother had possession of his firearms.

Delgado's attorney asked no questions on cross-examination.

State Exhibits #1 through #5 were admitted for purposes of the bond hearing. Exhibit #1 is the probable cause affidavit by Detective Wahrmund[1] in support of the charge that, on or about June 9, 2020, Delgado committed two or more violations of a protective order during a continuous period of twelve months or less under Penal Code section 25.072. The affidavit/complaint recites that Delgado was arrested on February 2, 2020 and March 31, 2020 for violating the protective order by making in-person contact. In addition, the affidavit/complaint states that Bethany filed 17 additional reports with the New Braunfels Police Department documenting Delgado's contact with her by cellular phone in violation of the protective order. Exhibit #2 is an arrest report showing Delgado was arrested under a warrant on June 18, 2020 for repeated violation of a protective order and a surety bond was set at $150,000. Exhibit #3 is an arrest report showing Delgado was arrested without a warrant at a particular address on July 8, 2020 for repeated violation of a protective order and a $75,000 surety bond was set. The record contains no document or testimony indicating the date on which Delgado's other bond(s) was increased to

---

[1] The copy in the record is not signed, but there was no trial objection that the document is not a true and accurate copy of the signed original.

$500,000. Finally, Exhibits #4 and #5 are copies of text messages sent to Bethany on June 13-15, 2020.

In addition to the above evidence, Delgado's affidavit attached to his habeas application avers that all the factual statements made therein are true, to wit: he is a "long-time resident of Guadalupe County;" he "owns and runs his plumbing business in this venue;" he "has retained counsel in this matter;" he "is not a flight risk;" the bond amount is "beyond his financial means;" and he "will be present at every hearing or event where his presence is required." With respect to the July 8th arrest, Delgado's habeas application states he was called to a customer's residence in the same neighborhood where his wife lives; he used a laser to measure the distance to Bethany's residence and it measured more than 500 feet; when the officer arrived, "he measured from a different location and found that it was 497 feet away." The final protective order signed on February 12, 2020 is also attached to Delgado's habeas application. The protective order contains findings by the trial court that "Delgado has committed family violence" and "family violence is likely to occur in the future." The order identifies the protected persons as Bethany Delgado and her daughter S.D. Among other restrictions, the protective order prohibits Delgado from going "to or near" any protected person's residence, place of employment, or school and specifically requires Delgado to "maintain 500 feet away" from such locations.

At the end of the hearing, Delgado's counsel argued his bond should be reduced because "[h]e has ties to the community, he has family in the community, he works. He's not a flight risk. In fact, he has hired several attorneys to represent him in this matter and another legal matter . . . ." Counsel asserted, "there's no way he can afford it [the bond], and most people couldn't" and suggested there were other ways to ensure the victims' safety such as GPS monitoring and weekly monitoring. Counsel further asserted Delgado did not intentionally come within 500 feet of Bethany's residence and, if he did, it was because he was at a worksite. For those reasons,

Delgado's counsel argued the bond amount is "unreasonably high, oppressive, and was entered for purely punitive reasons" and should be reduced to "something Mr. Delgado can afford with whatever monitoring conditions . . . the Court sees fit."

In response, the prosecutor replied, "this is really about the safety of the victim and the community." Referring to the State's exhibits, the prosecutor asserted they show that Delgado was released on the $150,000 bond after his June 18th arrest because he was subsequently arrested at an address in Bethany's neighborhood on July 8th. "Someone who has been arrested and bonded and commits continuous violations again is not somebody that is taking this seriously, is not somebody that is respecting rules and regulations and a simple GPS monitor wouldn't be acceptable to keep a victim like that safe."

At the end of the hearing, the trial court took the matter under advisement. On August 14, 2020, the trial court signed a general order denying Delgado's request for habeas corpus relief.

### *Application*

In determining whether Delgado met his burden to prove the bail is excessive, a court analyzes the factors individually and weighs them as a whole in considering whether the bail is reasonable under the circumstances. *Ex parte Nimnicht*, 467 S.W.3d at 67. "Appropriate bail is a fact-driven determination and each case must be judged on its own unique facts." *Id.*; *Esquivel v. State*, 922 S.W.2d 601, 604 (Tex. App.—San Antonio 1996, no pet.).

On appeal, Delgado argues that he established that he is a long-time resident of the county, owns and runs a plumbing business there, has family ties in the community, and is not a flight risk. *See Ex parte Nimnicht*, 467 S.W.3d at 68 (noting a defendant's community ties, which include residence history, work history, and family ties, can be viewed as assurance he will appear in court). However, the record contains no testimonial or documentary evidence to support any of Delgado's conclusory statements on these factors. In his verified habeas application, Delgado

states he is a long-time resident, but there is no evidence showing how long Delgado has lived in the county, whether he owns or rents his current home, or how long he has lived in that home. Delgado provided no evidence to support his assertion that he owns a plumbing business and works as a plumber in the county. Neither the name of the plumbing business nor any business records or other documents showing the existence of the business and how long Delgado has owned it and/or worked there were presented to the trial court. Similarly, Delgado provided no specific information about any family members who reside in the county or any other ties he has to the community. Delgado's statements in his habeas application are wholly conclusory.

Delgado also did not provide any testimonial or documentary evidence regarding his personal or business finances and assets, or those of his family, with respect to his ability or inability to make a $575,000 bond. A defendant should ordinarily offer evidence of his available resources and his unsuccessful attempts to post bail in the current amount. *Ex parte Dueitt*, 529 S.W.2d 531, 532 (Tex. Crim. App. 1975). "To show that he is unable to make bail, a defendant generally must show that his funds and his family's funds have been exhausted." *Ex parte Castellanos*, 420 S.W.3d 878, 883 (Tex. App.—Houston [14th Dist.] 2014, no pet.). The only evidence in the record that is relevant to this factor of Delgado's ability to make bail is Detective Wahrmund's probable cause affidavit and the arrest reports. Those exhibits support a reasonable inference that Delgado was able to secure his release on the $150,000 surety bond set on June 18th because he was present in person at an address close to Bethany's residence at his July 8th arrest for violation of the 500-feet restriction. Delgado asserts on appeal that it was not necessary for him to present any proof that he cannot make the $575,000 bond because it is "obvious," and he is not required to prove "a useless thing." Delgado misinterprets the caselaw as excusing any need for proof of his financial ability or inability to make the bond amount. In the cases cited by Delgado, there was other evidence in the record showing the depleted finances of the defendant

and his family and thus the courts did not require the defendant to "do a useless thing" by showing he had unsuccessfully attempted to post bail in the challenged amount. *See Ex parte Dueitt*, 529 S.W.2d at 532; *see also Milner v. State*, 263 S.W.3d 146, 149 (Tex. App.—Houston [1st Dist.] 2006, no pet.); *Ex parte Bogia*, 56 S.W.3d 835, 836 (Tex. App.—Houston [1st Dist.] 2001, no pet.). "Unless he has shown that his funds and those of his family have been exhausted, a defendant must usually show that he made an unsuccessful effort to furnish bail before bail can be determined to be excessive." *Milner*, 263 S.W.3d at 149. "If both the defendant and his family indicate a financial inability to procure a surety bond, the court will not require him 'to do a useless thing.'" *Id.* at 149-50 (citing *Dueitt*, 529 S.W.2d at 532-33). Here, the record contains no evidence of the financial abilities or inabilities of Delgado and his family, or any unsuccessful attempts to post the current bail.

With respect to the nature of the alleged offense, the potential sentence, and any aggravating circumstances, Delgado stands charged with continuous/repeated violation of a domestic violence protective order. The State's exhibits establish that Delgado has been arrested four times for violating the protective order during a seven-month period. His alleged violations include two in-person contacts, physical proximity within 500 feet of the protected persons' residence, and multiple police reports filed by Bethany for prohibited contact by cell phone. While Delgado is entitled to the presumption of innocence at this stage of the proceedings, his pattern of arrests for repeatedly committing the same offense within such a short timeframe works as an aggravating factor and goes to show a disregard for the authority of the court and its orders. The only information provided by Delgado concerning any of the alleged violations is his statement in his habeas application that he did not intentionally violate the protective order on July 8, 2020 by coming within 500 feet of Bethany's residence because his own measurement showed he was 497 feet away. Delgado claims he was working at a customer's home that day, but provided no

evidence to support his claim. Moreover, the exhibits show Delgado's conduct has escalated from misdemeanor violations of the protective order to felony conduct based on the number of times he has allegedly violated the order. Delgado currently faces a sentence of imprisonment between two and ten years and up to a $10,000 fine, which is a significant potential sentence. *See* TEX. PENAL CODE ANN. § 12.34; *see also Ex parte Nimnicht*, 467 S.W.3d at 67-68 ("significant potential sentence" of two to ten years supports a reasonable conclusion that a possibility exists the defendant will not appear for trial).

The factors related to the future safety of the victims and the community and Delgado's failure to comply with a prior bond are also highly relevant here. The trial court made a finding in the final protective order that Delgado had committed domestic violence in the past and would likely do so again in the future. The pattern of Delgado's arrests indicates his disregard of the court's authority and its order. Bethany testified that Delgado has been physically aggressive, has misused guns in the presence of her and her daughter, has no respect for the court's protective order, and she is concerned for her safety and that of her daughter if Delgado is released on bond. In addition, as noted, the record shows Delgado was arrested on the section 25.072 felony charge on June 18, 2020 and a $150,000 bond was set. While Delgado was free under that bond, he went to a residence close to Bethany's home and was arrested again for violating the protective order; thus, the record supports a finding that he violated a condition of a prior bond by committing a new offense. In its role as factfinder, the trial court could have credited Bethany's testimony about the danger posed by Delgado and concluded that, in view of Delgado's repeated arrests for violating the court's protective order, at least one of which occurred while he was out on bond for a prior violation, his statement that he would appear at every hearing and would comply with any monitoring restrictions attached to a lower bond was not credible.

Finally, Delgado argues that the courts have held lesser bail amounts to be excessive in cases with more serious charges. *See*, *e.g.*, *Ex parte Wood*, 952 S.W.2d 41, 42-43 (Tex. App.—San Antonio 1997, no pet.) (holding a combined $450,000 bond on capital murder and aggravated robbery charges was too high under the bond factors). However, as noted, bail cases are highly fact-specific and the cases cited by Delgado are factually distinguishable with respect to the relevant factors and also with respect to the amount of evidence presented on the factors. Here, Delgado simply failed to present any evidence on many of the relevant factors.

We conclude that Delgado failed to meet his burden to show that under the relevant factors the trial court abused its discretion in setting the amount of his combined bond. We consider it particularly noteworthy that Delgado has exhibited a pattern of disregard for court orders, including the protective order and the previous bond order. Despite Delgado's assertion through his counsel that he would comply with any monitoring or other conditions of a reduced bond in this case and would appear for all court hearings, the trial court could have reasonably concluded that the current bond amount was necessary to reasonably assure Delgado's appearance and to safeguard the safety of the protected persons under the protective order.

## CONCLUSION

Based on the foregoing reasons, we affirm the trial court's order denying Delgado's habeas application seeking a reduction in the amount of his bond.

Liza A. Rodriguez, Justice

Do Not Publish