**Opinion issued January 14, 2021.**



In The

# Court of Appeals

For The

# First District of Texas

———————————————

## NO. 01-20-00639-CR

———————————————

### EX PARTE JERRY CASTILLE, Appellant

---

**On Appeal from the 184th District Court**
**Harris County, Texas**
**Trial Court Case No. 1683152**

---

### MEMORANDUM OPINION

Appellant Jerry Castille filed a pretrial application for writ of habeas corpus, seeking to lower his bail in seven felony cases. The trial court denied Castille's requested habeas relief, and Castille appeals the trial's court judgment. *See* TEX. CODE CRIM. PROC. art. 11.24; TEX. R. APP. P. 31.

We affirm.

## Background

The habeas record for this appeal is sparse, comprised primarily of Castille's application for writ of habeas corpus and supporting unsworn declaration, which he stated was made "under the penalties of perjury." *See* TEX. CIV. PRAC. & REM. CODE § 132.001(a) (providing that "an unsworn declaration may be used in lieu of a written sworn declaration, verification, certification, oath, or affidavit required by statute or required by a rule, order, or requirement adopted as provided by law"). According to his application, Castille has been charged with seven felony offenses: five offenses of possession of child pornography, one offense of compelling prostitution of a minor, and one offense of trafficking of a child.

Castille indicated that his minor daughter is the complainant for the offenses. Castille stated that his daughter now denies that he "posted any photos of her" or that he had "promote[d] her encounters with any adult male." Castille claimed that his daughter "admitted [to] posting [the] photos and texts." He acknowledged that her cell phone was registered in his name, but he denied that he had the passcode for her phone and denied having "access to any app or code [on her phone] that would enable him to promote his daughter with any males."

The total amount of bail set by the trial court for all seven offenses was $325,000, itemized as follows: $25,000 for each offense of possession of child pornography, $100,000 for the offense of compelling prostitution of a minor, and

$100,000 for the offense of trafficking of a child. In his habeas application, Castille requested the trial court to lower his bail and amend the conditions of his bail.

Castille characterized the set bail amounts as "excessive." He claimed that he has been unable to obtain funds for the bonds. He stated that he cannot work because he is in jail and has been in a wheelchair "for a number of years." Castille claims that "his family has tried to gather funds" but have been unsuccessful, and he has "no other resources."

Castille averred in his declaration that his family "consist[ed] of [M.] Brown and [his] minor daughter and two minor sons." He stated Brown was his "live-in companion even though [he was] technically still married to [his] first wife" from whom he said he has been "estranged for 14 years." Castille averred that Brown worked for the toll road authority but "[did] not possess the money to make the $325,000 bonds."

Castille asserted that "[r]eleasing [him] from jail is vital to [his] well-being." He "urge[d] the [trial court] to reduce the bonds and modify appropriate bond conditions to permit him to assist his attorney in the defense of his cases." Castille claimed that, due to COVID-19 restrictions in the jail, he has been unable to meet in person with his counsel. He asserted that he could better assist his counsel if he were released from jail. Castille acknowledged the possibility of meeting with his counsel "by videoconferencing" but expressed concern, without providing further

3

elaboration or support, that meeting with his counsel by videoconference was "suspect . . . because there is no guarantee that the Sheriffs jail video meeting would be Constitutionally protected."

Castille acknowledged that he has "a criminal record and past physical abuse history." He claimed, however, that "these issues have been addressed," and he stated that Brown "wants him home." He averred in his declaration that he was "neither a threat to the community nor any of [his] minor children." Castille stated that Brown would "assist him with his physical and mental well-being that is necessary to accomplish the goals of appearance at court proceedings and community protection" and that he was "willing to accept any reasonable conditions that [the trial court] may impose to insure [his] appearance at court settings." As conditions, Castille suggested that the trial court order him to wear an ankle monitor, have restricted contact with the "subject child," and allow him monitored access to his three minor children.

The trial court denied Castille's requested habeas relief to lower his bail. In its judgment, the trial court stated,

> Today, this Court heard applicant's application for writ of habeas corpus. The writ issued by this Court has been returned and the applicant and an assistant district attorney representing the State of Texas appeared for a hearing on the application. After reviewing the pleadings and hearing the evidence and argument of the parties, the Court . . . ORDERS RELIEF DENIED, and remands applicant to the custody of Harris County Sheriff's Department.

4

## Denial of Habeas Relief

Castille now appeals the trial court's judgment denying his requested habeas relief to reduce his bail. We did not request briefing. *See* TEX. R. APP. P. 31.1, 31.2.

### A.     Legal Principles

The primary purpose of setting bond is to secure the presence of the defendant in court at his trial. *Ex parte Vasquez*, 558 S.W.2d 477, 479 (Tex. Crim. App. 1977); *Cooley v. State*, 232 S.W.3d 228, 234 (Tex. App.—Houston [1st Dist.] 2007, no pet.). The right to be free from excessive bail is protected by the United States and Texas Constitutions. *See* U.S. CONST. amend. VIII; TEX. CONST. art. I, § 11.

When faced with excessive bail, an accused has the right to assert his or her constitutional right to reasonable bail by way of a pretrial writ of habeas corpus. *See* TEX. CODE CRIM. PROC. art. 11.24 (providing that defendant may challenge excessiveness of his bail by petition for writ of habeas corpus). An applicant for habeas corpus relief must prove his factual allegations by a preponderance of the evidence. *See Ex parte Thomas*, 906 S.W.2d 22, 24 (Tex. Crim. App. 1995). The burden of proof is on the defendant to show that the amount of bail set was excessive. *Ex parte August*, 552 S.W.2d 169, 170 (Tex. Crim. App. 1977).

We review the trial court's denial of a bail-reduction request under an abuse of discretion standard. *See Ex parte Rubac*, 611 S.W.2d 848, 850 (Tex. Crim. App. [Panel Op.] 1981). Under this standard, we may not disturb the trial court's decision

if it falls within the zone of reasonable disagreement. *See Cooley*, 232 S.W.3d at 234. But an abuse-of-discretion review requires more of the appellate court than simply deciding that the trial court did not rule arbitrarily or capriciously. *Id.* The appellate court must instead measure the trial court's ruling against the relevant criteria by which the ruling was made. *Id.*

The amount of bail required in any case is within the discretion of the trial court subject to the following statutory factors:

1. The bail shall be sufficiently high to give reasonable assurance that the undertaking will be complied with.

2. The power to require bail is not to be so used as an instrument of oppression.

3. The nature of the offense and the circumstances under which it was committed are to be considered.

4. The ability to make bail is to be regarded, and proof may be taken upon this point.

5. The future safety of a victim of the alleged offense and the community shall be considered.

TEX. CODE CRIM. PROC. art. 17.15.

Case law provides that courts may also consider the following factors in setting bail: (1) the defendant's work record; (2) the defendant's family and community ties; (3) the defendant's length of residency; (4) the defendant's prior criminal record; (5) the defendant's conformity with previous bond conditions; (6) the existence of other outstanding bonds, if any; and (7) the aggravating

6

circumstances alleged to have been involved in the charged offense. *Rubac*, 611 S.W.2d at 849–50.

**B.    Analysis**

The trial court's judgment stated that "the applicant [Castille] and an assistant district attorney representing the State of Texas" appeared at the hearing on Castille's habeas application. The court reporter notified this Court that no reporter's record was made of the hearing. The judgment reflects that the trial court denied Castille's request to lower his bail "[a]fter reviewing the pleadings and hearing the evidence and argument of the parties," indicating that the trial court based its decision to deny Castille's requested habeas relief at least in part on evidence presented at the bail-reduction hearing.

A habeas applicant "bears the burden of ensuring that a sufficient record is presented to show error requiring reversal on appeal." *Washington v. State*, 326 S.W.3d 701, 706 (Tex. App.—Houston [1st Dist.] 2010, no pet.) (citing *Ex parte Chandler*, 182 S.W.3d 350, 353 n.2 (Tex. Crim. App. 2005) ("It is the applicant's obligation to provide a sufficient record that supports his factual allegations with proof by a preponderance of the evidence.")). In the absence of a reporter's record, a court reviewing the denial of a habeas application presumes there was evidence to support the trial court's judgment. *See Ex parte McKeand*, 454 S.W.3d 52, 54 (Tex. App.—Houston [1st Dist.] 2014, no pet.) (citing *In re Mott*, 137 S.W.3d 870, 875

(Tex. App.—Houston [1st Dist.] 2004, orig. proceeding)). Here, without a reporter's record, we presume that there was evidence presented at the bail-reduction hearing that supported the trial court's judgment denying Castille's requested habeas relief to lower his bail. *See id.* And, as discussed below, Castille's habeas application and declaration also provided support for the trial court's denial of the requested relief.

### 1.	*Nature and circumstances of offenses*

The primary factors to be considered in assessing the reasonableness of bail are the nature of the offense and the punishment that may be imposed. *Rubac*, 611 S.W.2d at 849; *see* TEX. CODE CRIM. PROC. art. 17.15(3); *Montalvo v. State*, 315 S.W.3d 588, 593 (Tex. App.—Houston [1st Dist.] 2010, no pet.) (recognizing that consideration of nature and circumstances of offense requires court to consider range of punishment permitted in event of conviction). When the nature of the offense is serious and a lengthy sentence following trial is probable, bail should be "set sufficiently high to secure the presence of the accused at trial because the accused's reaction to the prospect of a lengthy prison sentence might be not to appear." *In re Hulin*, 31 S.W.3d 754, 761 (Tex. App.—Houston [1st Dist.] 2000, no pet.); *Ex parte Hunt*, 138 S.W.3d 503, 506 (Tex. App.—Fort Worth 2004, pet. ref'd) ("Given the serious nature of the offenses and the potential for a lengthy sentence, the trial court could properly have concluded that the amounts of the bonds were reasonable.").

Here, the record does not contain the instruments setting out the charges against Castille, but his habeas application stated that he has been charged with seven felony offenses, including five offenses of possession of child pornography. Castille asserted that bail was set at $25,000 for each child-pornography charge.

Depending on the specific allegations of the charge, and whether the defendant is a repeat child-pornography offender, an offense for possession of child pornography may be a first-, second-, or third-degree felony. *See* TEX. PENAL CODE § 43.26. First-degree felonies are punishable by five to ninety-nine years or life in prison. *Id.* § 12.32(a). Second-degree felonies are punishable by two to twenty years in prison, *id.* § 12.33(a), and third-degree felonies are punishable by two to ten years in prison, *id.* § 12.34(a). For all three offense levels, a fine of up to $10,000 may also be assessed. *See id.* §§ 12.32(b),12.33(b), 12.34(b).

Here, without the charging instruments or the record from the bail-reduction hearing, we cannot review the specific allegations and nature of the alleged child-pornography offenses to know which punishment ranges apply. However, regardless of which ranges apply, a trial court may cumulate or "stack" sentences for child-pornography offenses, increasing the impact of the sentences when, as here, multiple child-pornography offenses have been charged. *See id.* § 3.03(b)(3)(A). And, if convicted of possession of child pornography, Castille will be required to register as

a sex-offender under the requirements of Chapter 62 of the Code of Criminal Procedure. *See id.* § 43.26; TEX. CODE CRIM. PROC. art. 62.001(5)(B).

Castille also stated in his habeas application that he has been charged with the offenses of compelling prostitution of a minor and trafficking of a child. The trial court set his bail at $100,000 for each offense. If convicted of the offenses, Castille could face lengthy prison sentences. Compelling prostitution of a minor and trafficking of a child are both first-degree felonies, TEX. PENAL CODE §§ 43.05(b), 20A.02(b), with a punishment range of five to ninety-nine years or life in prison and up to a $10,000 fine, *id.* § 12.32.

If he is convicted of both compelling prostitution of a child and trafficking of a minor, those sentences may be cumulated. *See id.* § 3.03(b)(5). And, if convicted of compelling prostitution of a minor, Castille would be required to register as a sex offender. *See id.* § 43.05; TEX. CODE CRIM. PROC. art. 62.001(5)(B). Depending on the circumstances of the charged offense, he may also be required to register as a sex offender if convicted of the offense of trafficking of a child. *See* TEX. PENAL CODE § 20A.02(a); TEX. CODE CRIM. PROC. art. 62.001(5)(K).

We note that bail amounts greater than $25,000 (as set here for each child-pornography offense) have been upheld even for third-degree felonies if additional, aggravating factors are shown. *See, e.g., Ex parte Dupuy*, 498 S.W.3d 220, 236 (Tex. App.—Houston [14th Dist.] 2016, no pet.) (upholding $200,000 bail set for charges

of third-degree-felony online impersonation due in part to aggravating factors of offense); *In re Durst*, 148 S.W.3d 496, 499 (Tex. App.—Houston [14th Dist.] 2004, no pet.) (noting that bail amount for third-degree felonies ranging up to $100,000 when aggravating factors are present). We further note that the $100,000 bail set here in the compelling prostitution of a child and trafficking of a minor cases is within the range of bail amounts that have been upheld for other first-degree felonies. *See Tata*, 358 S.W.3d 392, 399 n.6 (Tex. App.—Houston [1st Dist.] 2011, pet. dism'd) (listing cases in which court had upheld bail amounts ranging from $100,000 to $600,000 for first-degree felony offenses).

### 2.    *Sufficiently high bail to assure appearance but not oppress*

"The amount of bail should be set sufficiently high to give reasonable assurance that the accused will comply with the undertaking but should not be set so high as to be an instrument of oppression." *Cooley*, 232 S.W.3d at 234. "A defendant's ties to the community and work history bear on the adequacy of bail to give reasonable assurance he will appear." *Ex parte Tata*, 358 S.W.3d at 400.

Castille stated that he has been in a wheelchair "for a number of years." He also indicated that he is in a relationship with Brown, who he referred to as his "live-in companion." Castille averred that he "moved to Harris County to be near his family" and that he and Brown live together with their two minor sons. Castille stated that Brown "will assist him with his physical and mental well-being" to ensure that

11

he appears in court. Castille expressed a willingness to adhere to bail conditions if released from jail, such as wearing an ankle monitor and engaging in supervised visits with his children, including his minor daughter, who Castille indicated is the complainant.

Although Castille's familial ties and disabled status could provide support for his request to lower his bail, without a reporter's record from the bail-reduction hearing, we do not know what evidence, if any, was presented regarding the sufficiency of his bail to enable us to say that the trial court abused its discretion in denying his request to lower his bail. *See Ex parte Moore*, No. 2-08-234-CR, 2008 WL 4053017, at *3 (Tex. App.—Fort Worth Aug. 28, 2008, no pet.) (mem. op., not designated for publication) (determining that, when there was no reporter's record from bond-reduction hearing, appellant's assertion in his habeas application that he was life-long resident of Tarrant County was not enough for court to conclude that trial court abused its discretion in denying request to lower bail).

Further, Castille presented no specific claims that bail is being used as an instrument of oppression, that is, "for the purpose of forcing [him] to remain incarcerated pending trial." *Milner v. State*, 263 S.W.3d 146, 149 (Tex. App.—Houston [1st Dist.] 2006, no pet.). We observe that the record contains no indication that the trial court set the bail amounts for the purpose of ensuring that Castille remains incarcerated pending trial. *See Montalvo*, 315 S.W.3d at 596 ("Our

12

independent review of the habeas corpus record likewise does not suggest that the trial court deliberately set bail at an excessively high level solely to prevent [appellant] from posting bail.").

The only potentially "oppressive" circumstance mentioned by Castille is his claim that, due to COVID-19 restrictions, he has been unable to meet in person with his counsel. However, Castille acknowledged in his application that alternate means are available to communicate with his attorney, such as by videoconference. Beyond his vague claim that such means are "suspect . . . because there is no guarantee that the Sheriffs jail video meeting would be Constitutionally protected," Castille offered nothing to support the claimed inadequacy of any alternate means of communicating with his counsel.

### 3. *Ability to make bail*

The defendant's ability to make bail is another factor to be considered in determining the appropriate amount of bail. *See* TEX. CODE CRIM. PROC. art. 17.15(4). "[T]he ability of an accused to make bail does not itself control the amount of bail, even if the accused is indigent." *Wright v. State*, 976 S.W.2d 815, 820 (Tex. App.—Houston [1st Dist.] 1998, no pet.). If the defendant's ability to make bond in a specific amount controlled, "the role of the trial court in setting bond would be completely eliminated and the accused would be in the position to determine what his bond should be." *Milner*, 263 S.W.3d at 150.

To demonstrate inability to make bail, a defendant generally must establish his and his family's funds have been exhausted. *Id.* at 149. If he does not make that showing, a defendant must usually show that he made an unsuccessful effort to furnish bail before bail can be determined to be excessive. *Id.*

Castille stated that he cannot earn an income because he "is in custody in a wheelchair in the Harris County jail." Castille claimed that "his family has tried to gather funds" but have been unsuccessful, and he has "no other resources." In his declaration, Castille averred that Brown worked for the toll road authority but "[did] not possess the money to make the $325,000 bonds." However, Castille did not detail either his or his family's specific assets and financial resources, nor did he explain what efforts, if any, were made to furnish the bond. *See Ex parte Scott*, 122 S.W.3d 866, 870 (Tex. App.—Fort Worth 2003, no pet.) (affirming trial court's refusal to lower bond, in part, based on absence of evidence regarding defendant's ability to make bond when defendant's evidence consisted of his testimony that he and his family lacked sufficient assets or financial resources to post bond, and he did not detail either his or his family's specific assets and financial resources nor efforts to furnish bond); *see also Ex parte Goodson*, No. 01-15-00288-CR, 2015 WL 1868771, at *4 (Tex. App.—Houston [1st Dist.] Apr. 21, 2015, no pet.) (mem. op., not designated for publication) (determining that trial court properly could have

14

concluded that amount of bail was reasonable under circumstances because defendant "offered little evidence supporting his claimed inability to make bail").

### 4. Future safety of the victim and the community

In reviewing the trial court's bail determination, a court must consider "[t]he future safety of a victim of the alleged offenses and the community." TEX. CODE CRIM. PROC. art. 17.15(5); *Milner*, 263 S.W.3d at 150. Here, Castille represented that he has been charged with five offenses of possession of child pornography, one offense of compelling prostitution of a child, and one offense of trafficking of a minor. Castille also averred that he resided with his two minor sons and has a minor daughter, who he indicated is the complainant. Even without the reporter's record, these circumstances tend to support the trial court's refusal to reduce Castille's bail. *See Hulin*, 31 S.W.3d at 761 (determining that it was reasonable for trial court to give more weight to protecting victim than any other factor in upholding $150,000 bonds when appellant was charged with criminal solicitation of fifteen-year-old minor and sexual assault).

Castille generally claimed that measures can be put in place to protect his minor children, including his daughter, such as having restricted or monitored access to the children. However, without a reporter's record from the bail-reduction hearing, it is not possible to know whether evidence was offered regarding protective

measures, whether protective measures are feasible, or whether they would adequately protect Castille's children, particularly his daughter.

### 5. *Other Factors*

In addition to the considerations enumerated in the Code of Criminal Procedure, courts also consider the defendant's work record, family ties, residency, criminal record, conformity with previous bond conditions, and the aggravating factors involved in the offense. *See Rubac*, 611 S.W.2d at 850. Other than information regarding Castille's family ties, the limited record contains information regarding only one other consideration: Castille disclosed that he has "a criminal record and past physical abuse history." Castille's criminal record—including what Castille's characterizes as "physical abuse"—tends to support the trial court's refusal to lower his bail. *See Moore*, 2008 WL 4053017, at \*4 (concluding, in case where no reporter's record was made of bail-reduction hearing, that appellant's past felony conviction tended to support trial court's refusal to lower appellant's bail).

### Conclusion

Given the state of the limited record, including the absence of the reporter's record, we conclude that the trial court's implied determination that Castille's bail was reasonable and not excessive falls within the zone of reasonable disagreement when the relevant factors are applied. We hold that the trial court did not abuse its discretion when it denied Castille's requested habeas relief to lower his bail.

We affirm the judgment of the trial court.


Richard Hightower
Justice

Panel consists of Justices Goodman, Hightower, and Countiss.

Do not publish. Tex. R. App. P. 47.2(b).