**Joseph L. TOVAR, Appellant,**

v.

**BOARD OF TRUSTEES OF SOMER-SET INDEPENDENT SCHOOL DISTRICT, Appellee.**

**No. 13–97–521–CV.**

Court of Appeals of Texas, Corpus Christi.

May 13, 1999.

Rehearing Overruled July 15, 1999.

Judith Sanders–Castro, Mendelsohn & Jackson, P.C., San Antonio, Jose Garza, Edinburg, for appellant.

Robert A. Schulman, Schulman, Walheim & Heidelberg, Inc., Gustavo L. Acevedo, Jr., San Antonio, for appellee.

Before Justices DORSEY, CHAVEZ and RODRIGUEZ.

## OPINION

Opinion by Justice CHAVEZ.

Appellant Joseph Tovar appeals from a summary judgment in a declaratory judgment action brought by the Board of Trustees of Somerset Independent School District (the Board) declaring that Tovar had vacated his office as a trustee of the Board by failing to maintain his residence within District 1, the district he represented, and that the Board had the authority to declare the position vacant. In six points of error, Tovar argues that the Board was without standing to bring this lawsuit, the trial court was without jurisdiction to entertain this suit, the trial court erred in failing to hold that, under federal voting rights laws, the Board needed to obtain "preclearance" for the removal of Tovar from the United States Attorney General or the District Court for the District of Columbia; and that questions of material fact existed regarding whether he had vacated his office by failing to main-

tain his residence within the district he represented. We overrule these points and affirm the judgment of the trial court.

■ We first consider Tovar's arguments regarding jurisdiction and standing. Tovar contends that this case is a "removal" action, and is therefore subject to the provisions for removal of county officers in section 87 of the Texas Local Government Code. School board trustees are considered "county officers" within the meaning of this statute. *Garcia v. Angelini,* 412 S.W.2d 949, 951 (Tex.Civ.App.—Eastland 1967, no writ); *Whitmarsh v. Buckley,* 324 S.W.2d 298, 301 (Tex.Civ.App.—Houston 1959, no writ); *Prince v. Inman,* 280 S.W.2d 779, 781 (Tex.Civ.App.—Beaumont 1955, no writ). Officers may be removed for incompetency, official misconduct, or intoxication. TEX. LOC. GOV'T CODE ANN. § 87.013 (Vernon 1988).

■ However, the provision governing vacation of a school board trusteeship in section 11.052(e) of the Texas Education Code is self-enacting. The statute provides that "a trustee vacates the office if the trustee ... ceases to reside in the district the trustee represents." TEX. EDUC.CODE ANN. § 11.052(e) (Vernon 1996). In contrast, the removal statute specifies grounds for removal in section 87.013, and then authorizes a petition for removal based on those grounds in section 87.015. When a public official is guilty of conduct that is a ground for removal under the removal statute, the public officer remains in office until a judgment has been rendered on the petition for review. Under section 11.052(e) of the education code, if a trustee ceases to reside in his district, the vacation of his office is effective immediately.

■ Tovar also contends that the proper vehicle for the claims advanced by the Board was a quo warranto proceeding. We agree that a quo warranto proceeding would have been available. An action in the nature of quo warranto is available if a public officer does an act or allows an act

that by law causes forfeiture of his office. TEX. CIV. PRAC. & REM.CODE ANN. § 66.001(2) (Vernon 1997). However, the question remains whether quo warranto was the *exclusive* means available to the Board, or whether the declaratory judgment action it pursued was also permissible.

When a vacancy occurs on the board of trustees, the remaining trustees may fill the vacancy by appointment until the next trustee election, or they may order a special election to fill the vacancy. TEX. EDUC. CODE ANN. § 11.060(a),(c) (Vernon 1996). In many cases, as when a trustee dies or resigns, there will be no controversy regarding the appropriateness of filling the vacancy. However, in this case Tovar disputed having vacated his office by ceasing to reside in his district, and the Board's vote declaring that he had done so passed by the narrow margin of four to three. Therefore, the Board sought a declaratory judgment from the district court on this matter.

■ The purpose of the Declaratory Judgments Act is to settle and afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations. TEX. CIV. PRAC. & REM.CODE ANN. § 37.002(b) (Vernon 1997). It is to be liberally construed and administered. *Id.* In this case, Tovar's status as a trustee was disputed, and the rights of Tovar and the Board were uncertain. We hold that declaratory relief was available to afford relief from these uncertainties.

■ We next consider Tovar's arguments that the Board was without standing to bring this action. Tovar contends that only his constituents have standing to challenge his qualifications to serve on the Board. Tovar refers to the statute mandating that a removal petition may only be filed by a person who is a resident of the public official's district. TEX. LOC. GOV'T CODE ANN. § 87.015(b) (Vernon 1988). However, as discussed above, the Board's petition for declaratory relief is not a peti-

tion for removal, nor was it required to be. When a judgment is sought to declare that a public official has been automatically removed from office by virtue of some proscribed behavior by the public official, the rules governing removal actions do not apply. *Leo v. Mancias,* 885 S.W.2d 268, 270 (Tex.App.—Corpus Christi 1994, orig. proceeding).

Tovar contends that *Leo* stands for the proposition that only persons that have the right to elect a trustee from Tovar's district have the right to bring this kind of claim. We do not agree that *Leo* supports Tovar's standing argument. In *Leo* the sheriff of Hidalgo County had been found guilty of a felony by a jury, but a final judgment had not yet been entered. The Democratic and Republican Parties of Hidalgo County obtained a summary judgment in a declaratory judgment action declaring that the office of sheriff was vacant, and ordering the county clerk to place their candidates for sheriff on the ballot for the upcoming election. The sheriff and the county clerk sought a writ of mandamus to nullify the sheriff's removal from office. We held that the election code governs the date on which a vacancy occurs for purposes of electing a successor to the unexpired term of an official from office, and, because the election code specifically provided that "a vacancy occurs on the date the judgment becomes final," no vacancy yet existed for the office of sheriff for purposes of determining whether an election for a successor should be held. *Id.,*citing Tex. Elec.Code Ann. § 201.024 (Vernon 1986). Therefore we conditionally granted the mandamus relief sought. *Leo* does not contain any discussion of who has standing to bring a claim that an automatic removal of a public official has been effected.

Tovar also contends that *Garcia v. Angelini* stands for the propositions that an action such as this one *is* a removal action, and that the Board has no power to bring such an action. In that case, Angelini and certain other members of the Canutillo Independent School District Board of Trustees stood up and walked out during a board meeting, announcing that they were resigning or were going to resign. When Angelini's group tried to withdraw their resignations and resume their offices, Garcia and certain other trustees tried to bar them from participating as trustees. Angelini's group sued for an injunction against Garcia's group enjoining them from further interference with the execution of their offices and restraining Garcia's group from appointing trustees to fill the positions of Angelini's group. The trial court held that Angelini's group had withdrawn their resignations before they were accepted, and the court of appeals held that this factual determination was supported by sufficient evidence. *Garcia,* 412 S.W.2d at 952. In explaining why the trial court properly overruled the exceptions to the jurisdiction brought by Garcia's group, the court also held:

> Appellees were duly elected qualified and acting trustees of the Canutillo Independent School District. As such they were county officers within the meaning of the statutes providing for the removal of county officers. Appellants had no power to remove appellees from office. They likewise had no power to prohibit or bar appellees from attending and participating in meetings and proceedings of the school board in their official capacity. Appellants' action in attempting to prohibit appellees from so participating and acting as trustees was without legal authority. The action of appellants in determining contrary to the facts of the case that appellees were no longer trustees because of resignation and in attempting to appoint other trustees to fill the claimed vacancies was likewise without legal authority. Injunction is a proper remedy to restrain a public official from performing an invalid and unauthorized action.

*Id.* at 951.

We understand the court's holding to be that the actions of Garcia's group were

"without legal authority" because Angelini's group withdrew their resignations before they were accepted. We do not understand *Garcia* to hold that a school board is without legal authority to ever accept the resignations of trustees and appoint replacements. Although the court referred to the removal statutes, nowhere does the court indicate that a petition for removal is the required vehicle for recognizing a vacancy on a school board. Rather, the court holds only that the facts of this case did not authorize removal from office of Angelini's group. *Id.*

Tovar's fourth and fifth points of error are overruled.

■ We next consider whether the Board was required to obtain "preclearance" of its actions to have Tovar's place declared vacant. Jurisdictions covered by the Voting Rights Act of 1965 are required to obtain preclearance from the United States Attorney General or the United States District Court for the District of Columbia before undertaking any "voting qualification or prerequisite to voting," or any change in "standard, practice, or procedure with respect to voting." 42 U.S.C. § 1973c. The United States Supreme Court has identified four categories of government action that trigger the preclearance requirement. These are: (1) changes in the manner of voting, (2) candidacy requirements and qualifications, (3) changes in the composition of the electorate, and (4) substantive changes as to which offices are elective. *Presley v. Etowah County Comm'n*, 502 U.S. 491, 502–03, 112 S.Ct. 820, 828, 117 L.Ed.2d 51 (1992). The actions of the Board in this case do not fit into any of these categories. Although the United States Supreme Court indicated that they did not mean to imply that these four categories were exhaustive, *see id.*, the Board's actions related to Tovar's possible vacancy did not otherwise affect any "voting qualification or prerequisite to voting," or any change in "standard, practice, or procedure with re-

spect to voting." Therefore preclearance was not required, and the trial court did not err in refusing to grant summary judgment on the ground that preclearance had not been obtained. Tovar's sixth point of error is overruled.

■ We now consider Tovar's challenges to the substance of the summary judgment motion. Tovar's first three points of error argue that the Board failed to prove as a matter of law that Tovar did not reside in his district and that questions of material fact precluded summary judgment. In reviewing a summary judgment, we assume all the non-movant's proof as true and indulge every reasonable inference in the non-movant's favor. *Science Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 911 (Tex.1997). All doubts about the existence of a genuine issue of a material fact must be resolved against the movant. *Johnson County Sheriff's Posse, Inc. v. Endsley*, 926 S.W.2d 284, 285 (Tex.1996). The movant has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–49 (Tex.1985).

The Board's motion for summary judgment relied on deposition testimony given by Tovar in another proceeding, where he testified about the location of his residence. The crucial testimony for purposes of this case was Tovar's deposition testimony on September 29, 1995, when he testified that he resided at 20780 State Highway 16 South. Tovar testified in a subsequent deposition that he moved away from the Highway 16 address to 4128 Kings Hill[1] in October 1995.

The Board attached maps that showed the boundaries between the trustee districts of the school district. These maps were authenticated by an affidavit from Mark Parker, the elections officer for Somerset Independent School District.

---

1. Both parties seem to concede that 4128 Kings Hill is inside District 1.

These maps show streets, but do not show addresses.

The Board argues that the trial court could take judicial notice of the location of the addresses on the streets. A judicially noticed fact must be one not subject to reasonable dispute in that it is either generally known within the territorial jurisdiction of the trial court, or capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. TEX.R. EVID. 201(b). In matters involving geographic knowledge, it is not necessary that a formal request for judicial notice be made by a party. *Apostolic Church v. American Honda Motor Co.*, 833 S.W.2d 553, 556 (Tex.App.—Tyler 1992, writ denied). The location of addresses on streets can be accurately and readily determined by consulting maps that show addresses. From consulting the district maps attached to the Board's summary judgment motion and other maps [2] that show addresses along Highway 16, it is apparent that the Highway 16 address is not in District 1.

Tovar argues that, even if he may have lived temporarily outside of District 1, it was always his intention to return to his permanent residence in the district. A "residence" is a person's fixed place of habitation, from which the person has no present intention of moving. *Prince,* 280 S.W.2d at 782. Accordingly, a person loses his or her residence when the person leaves a permanent home and moves to another place with no present intention to return to the former abode. *Id.;* Tex. Att'y Gen. LO 92–19 (1992). On the other hand, if a person moves to a new location only temporarily, presently intending to return to the previous place of habitation, the person does not lose his or her residence. *Id.*

The *Prince* case is instructive. In *Prince,* Inman sold his house in Warren, Texas on August 16, 1954 and moved with his family to Nacogdoches County. In Nacogdoches County he and his family lived in a rented house for approximately one month before returning to Warren. The issue was whether Inman had intended to return to Warren when he went to Nacogdoches. Inman presented evidence that he had told people in Warren that he was going to Nacogdoches County on a trial basis, and that he would return to Warren if things did not work out in Nacogdoches County. His employer in Warren, his father-in-law, had not hired a replacement for Inman, but rather held his job open for him. He also refused to sign a long-term lease for his rented house in Nacogdoches County. The trial court made findings that Inman had not abandoned his residence in Warren, and refused to enjoin Inman from serving in his elected position as trustee of the Warren Independent School District. The Beaumont Court of Appeals reversed this judgment and held that, because Inman did not intend to return to Warren when he left for Nacogdoches County, his position as trustee was vacated. *Prince,* 280 S.W.2d at 782. The Court explained, "His intention to move back to Warren if his job in Nacogdoches County proved unsatisfactory does not have any significance, since it was not a fixed intention, not a formed or present intent to return to Warren, but was at most an intent subject to a future contingency." *Id.*

In this case, Tovar gave sworn testimony on September 29, 1995 that his residence was 20780 Highway 16, an address outside of District 1. Tovar argues that this was only a temporary residence, and that it was always his intention to return to District 1. However, there was no mention in his testimony that he considered or intended the Highway 16 address to be only a temporary residence, and that his fixed home was in District 1. Tovar points to the affidavit of Leo Salas, which states that Tovar was asked to leave his address in District 1 because harassment by Tovar's political enemies

---

**2.** The Board enclosed copies of such maps as an appendix to its brief.

was upsetting Tovar's neighbors, and that housing was difficult to find in District 1. While this testimony may explain why Tovar left District 1, it does not change the fact that he did leave, and it does not provide any indication that Tovar intended to return to District 1.

 The trial court was confronted with a sworn statement from Tovar that he resided at an address outside District 1. Tovar did not qualify this statement in any way, such as explaining that this was only a temporary address and that he intended to return to District 1. There was no other evidence that Tovar intended to return to District 1. We hold that, where a county officer moves away from the territory the officer represents and there is no evidence that the county officer intends to return to that territory, the county officer vacates his or her office. Tovar's first three points of error are overruled.

We affirm the judgment of the trial court.