

# NUMBER 13-25-00028-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

## EX PARTE COLTON LANE HODGES

## ON APPEAL FROM THE 25TH DISTRICT COURT
## OF GONZALES COUNTY, TEXAS

## MEMORANDUM OPINION

**Before Chief Justice Tijerina and Justices West and Fonseca**
**Memorandum Opinion by Justice West**

Appellant Colton Lane Hodges was indicted for continuous sexual abuse of a child under fourteen (Count I), two counts of aggravated sexual assault of a child (Counts II–III), and two counts of indecency with a child (Counts IV–V). *See* TEX. PENAL CODE ANN. §§ 21.02, 21.11, 22.021. Appellant appeals the denial of his application for writ of habeas corpus seeking a reduction in his bond. We affirm.

# I.    BACKGROUND

Hodges, while still a high school student, left his mother's house despite her objection and moved in with a friend's family (the Roberts[1] Family). The Roberts Family consisted of Taylor Roberts and her children: three boys and one girl named Eva (the complainant). Hodges and the Roberts Family lived at two different locations: a home owned by Roberts and a home owned by Sally Williams, Taylor Roberts's mother. Hodges was arrested and indicted for the crimes enumerated above, allegedly committed while he lived with the Roberts Family. Originally, a single bond of $250,000 was set for all counts. Hodges sought habeas relief, arguing his bond should be reduced. After a hearing on the matter, the trial court reduced the bond to $100,000. This appeal followed, wherein Hodges argues the reduced bail is still too high. *See Ex Parte Sifuentes*, 639 S.W.3d 842, 846 (Tex. App.—San Antonio 2022, pet. ref'd) (noting that "[i]f the record shows that the trial court heard evidence and addressed the merits [of a habeas application], the result is appealable."); *Sanchez v. State*, 340 S.W.3d 848, 852 n.6 (Tex. App.—San Antonio 2011, no pet.) (noting that "[a] habeas corpus proceeding is a separate and distinct proceeding, independent of the cause instituted by an indictment" and "[a] trial court order granting or denying habeas relief is therefore a final order, and an appeal from such an order is not interlocutory").

---

[1] In this memorandum opinion, we use pseudonyms to protect the identity of the complainant and her family. See TEX. CONST. art. I, § 30(a)(1) (providing that a crime victim has "the right to be treated . . . with respect for the victim's dignity and privacy throughout the criminal justice process"); TEX. CODE CRIM. PROC. ANN. ch. 58, subch. C ("Confidentiality of Identifying Information of Sex Offense Victims").

## II.  STANDARD OF REVIEW

We review the trial court's pre-trial bail decision for an abuse of discretion. *Ex Parte Gill*, 413 S.W.3d 425, 428 (Tex. Crim. App. 2013) (holding the "decision of a trial judge at a habeas proceeding regarding the imposition or reduction of bail 'will not be disturbed by this Court in the absence of an abuse of discretion'" (quoting *Ex Parte Spaulding*, 612 S.W.2d 509, 511 (Tex. Crim. App. 1981))); *Ex Parte Rubac,* 611 S.W.2d 848, 850 (Tex. Crim. App. 1981). Accordingly, we will only reverse the trial court if it acts without reference to any guiding rules and procedures or renders a ruling that is arbitrary and unreasonable. *Montgomery v. State,* 810 S.W.2d 372, 380 (Tex. Crim. App. 1990); *Ex Parte Gonzalez,* 383 S.W.3d 160, 161 (Tex. App.—San Antonio 2012, pet. ref'd). Even if a trial court decides a matter in a different manner than an appellate court would in a similar circumstance, this does not demonstrate that an abuse of discretion has occurred. *Ex Parte Scott*, 122 S.W.3d 866, 868 (Tex. App.—Fort Worth 2003, no pet.) (citing *Montgomery*, 810 S.W.2d at 380).

"The burden of proof is on the defendant to show that bail is excessive." *Ex Parte Gomez*, 624 S.W.3d 573, 576 (Tex. Crim. App. 2021). When reviewing the trial court's habeas ruling, "we view the record in the light most favorable to the ruling." *Id*.

## III.  ANALYSIS

Texas Code of Criminal Procedure Article 17.15 "sets out rules for fixing the amount of bail." *Id*. It provides:

> 1.  Bail and any conditions of bail shall be sufficient to give reasonable assurance that the undertaking will be complied with.

3

2. The power to require bail is not to be used to make bail an instrument of oppression.

3. The nature of the offense and the circumstances under which the offense was committed are to be considered, including whether the offense:

    (A) is an offense involving violence as defined by Article 17.03; or

    (B) involves violence directed against a peace officer.

4. The ability to make bail shall be considered, and proof may be taken on this point.

5. The future safety of a victim of the alleged offense, law enforcement, and the community shall be considered.

6. The criminal history record information for the defendant . . . shall be considered, including any acts of family violence, other pending criminal charges, and any instances in which the defendant failed to appear in court following release on bail.

7. The citizenship status of the defendant shall be considered.

TEX. CODE CRIM. PROC. ANN. art. 17.15. In addition, courts may consider employment history, family ties, length of residency, criminal history, previous bond compliance, other outstanding bonds, and aggravating facts of the charged offense. *Gomez*, 624 S.W.3d at 576.

## A. Nature and Circumstances of the Offense

Of all the factors, "[t]he primary factors are the length of the sentence . . . and the nature of the offense." *Rubac*, 611 S.W.2d at 849; *Gonzalez*, 383 S.W.3d at 161 (citing *Ex Parte Rodriguez*, 595 S.W.2d 549, 550 (Tex. Crim. App. [Panel Op.] 1980); *In re Hulin*, 31 S.W.3d 754, 761 (Tex. App.—Houston [1st Dist.] 2000, no pet.) ("Pretrial bond in these kind[s] of cases should be set sufficiently high to secure the presence of the accused at

trial because the accused's reaction to the prospect of a lengthy prison sentence might be not to appear.")

Here, Count I of the indictment is a first-degree felony punishable by imprisonment "for life, or for any term of not more than 99 years or less than 25 years." TEX. PENAL. CODE ANN. § 21.02(h). Counts II–III are first degree felonies, punishable by imprisonment "for life or for any term of not more than 99 years or less than 5 years" and/or "a fine not to exceed $10,000." *Id*. §§ 22.021(e), 12.32. Counts IV–V are second degree felonies punishable by imprisonment "for any term of not more than 20 years or less than 2 years" and/or "a fine not to exceed $10,000." *Id.* §§ 12.33, 21.11(d). All of these are "offenses involving violence" as defined in article 17.03 of the Texas Code of Criminal Procedure. *See* TEX. CODE CRIM. PROC. ANN. art. 17.03(b-3)(2)(G), (H), (L); *see also id.* art. 17.15(3)(A). Additionally, the foregoing punishments related to separate counts may be assessed to run consecutively. *See id*. art. 42.08(a).

Factually, the indictment alleges that Hodges penetrated Eva's anus and mouth with his sexual organ, touched Eva's breasts, and caused Eva to touch his genitals. At the time, Eva was a seven-year-old girl with dyslexia, and Hodges was seventeen. According to the evidence at the habeas hearing, Eva made two outcries. First, after being caught talking about sex on the school bus, she described to her school counselor being sexually abused by two people: Hodges and Damian (one of her three brothers). She further stated the abuse made her uncomfortable, but she did not know how to make Hodges and Damian stop. Second, she approached Williams holding a "rubber" and stated, "I know what this is, and I know what they do with it." One of Eva's brothers told

5

Williams that they just blew the "rubbers" up and popped them. Damian has since admitted to committing sexual abuse as alleged by Eva.

Hodges argues the following supports a greater bond reduction: (1) Eva told the counselor that she was in her first grade teacher's class when the abuse occurred, but Hodges only lived with the Roberts Family when Eva was in second grade; and (2) Hodges slept in a different room than Eva, was not left alone with Eva, and would not have had access to Eva.

Regarding the first assertion, Eva's counselor stated children of Eva's age and condition have a "very loose" "concept of time." Further, the trial court could have found the allegations against Hodges to be credible, despite the time discrepancy, especially given that Damian admitted to the abuse Eva alleged against him. *See Ex Parte Reyes-Martinez*, 653 S.W.3d 273, 280 (Tex. App.—Austin 2022, no pet.) ("The trial court is the exclusive judge of witness credibility, and we afford it 'considerable discretion in making those challenging determinations.'")

Regarding the second assertions, Hodges cites the testimony of Roberts and Williams as support. However, Roberts testified that she worked and sometimes went to sleep earlier than her kids (including Eva), making her unaware of what happened between her kids and Hodges during those times. Related to her knowledge of whether Hodges was left alone with Eva, Roberts merely testified "not that *I know of.*" (emphasis added). When asked if, *to her knowledge*, Eva ever woke Hodges up or was alone with Hodges, Roberts responded, "No. *But I would fall asleep sometimes before my daughter*." (emphasis added). When defense counsel stated Eva "didn't have much interaction with

6

[Hodges]," Roberts stated, "Not too much that *I know of*, no." (emphasis added). Roberts further testified that she had no idea that one of her sons was sexually abusing Eva. Williams testified that when Hodges and the Roberts Family were at her house, Eva "usually" slept in Williams's room. When asked if Eva was ever left alone with Hodges, Williams testified, "No, not at—I mean, she would walk in the room when the boys were there, because they were in there playing on their phones, and she wanted to go and see what they were doing, but no." Williams further testified that she was not around Hodges twenty-four hours a day and that she was unaware that one of her grandsons was sexually abusing Eva. Thus, Hodges has failed to prove his second assertions.

Hodges faces substantial punishment. He is a young person who could spend the rest of his life in prison if convicted on just one of the first three counts. And the other counts also carry substantial punishments. A bond sufficient to secure his presence at trial is required. *See Hulin*, 31 S.W.3d at 761. The nature of the offense is particularly aggravating considering the age and vulnerability of the complainant. *See Gomez*, 624 S.W.3d at 576. This factor weighs in favor of the trial court's denial of further bail reduction. *See Ex Parte Ramirez-Hernandez*, 642 S.W.3d 907, 918 (Tex. App.—San Antonio 2022, no pet.) (finding the nature and circumstances factor weighed in favor of a high bail considering sexual assault charges).

## B.  Ability to Make Bail

"The ability to make bond is one of many factors to be considered; however, it does not control the amount of bail and will not automatically render an amount excessive." *Clemons v. State*, 220 S.W.3d 176, 178 (Tex. App.—Eastland 2007, no pet.) (citing *Ex*

*Parte Charlesworth*, 600 S.W.2d 316 (Tex. Crim. App. 1980); *Ex Parte Branch*, 553 S.W.2d 380, 382 (Tex. Crim. App. 1977)). "If the ability to make bond in a specified amount controlled, then the role of the trial court in setting bond would be eliminated, and the accused would be in the position to determine what his bail should be." *Id.* (citing *Branch*, 553 S.W.2d at 382). Further, "[t]o show that he is unable to make bail, a defendant must show that his funds and his family's funds have been exhausted." *Reyes*, 653 S.W.3d at 281 (quoting *Milner v. State*, 263 S.W.3d 146, 149 (Tex. App.—Houston [1st Dist.] 2006, no pet.) (internal citations omitted)). "Unless he does so, he must 'usually show that he made an unsuccessful effort to furnish bail before bail can be determined to be excessive.'" *Id.* (quoting *Milner*, 263 S.W.3d at 149 (internal citations omitted)). Moreover, "[w]here the assets and savings of an appellant's family, and not his own, are at stake, there may be 'little or no incentive for him to appear.'" *Id*.

Here, Hodges has failed to show that his funds and his family's funds have been exhausted.[2] He submitted an affidavit for purposes of obtaining court appointed counsel which states his employment, income, assets, and liabilities are "N/A." An order was entered by the trial court appointing Hodges counsel after finding he was "too poor to employ counsel." But Hodges no longer has court-appointed counsel and is represented privately. Moreover, Hodges's mother testified that she is unable to pay bond for Hodges, but there is no evidence regarding the details of her financial condition or that of other

---

[2] Related to his ability to make bail, Hodges relies primarily on a declaration and testimony he provided at an indigency hearing in February 2025. However, "we must review the trial court's ruling in light of what was before the court at the time the ruling was made." *Allen v. State*, 473 S.W.3d 426, 443–44 (Tex. App.—Houston [14th Dist.] 2015, pet. granted) (citing *Willover v. State*, 70 S.W.3d 841, 845 (Tex. Crim. App. 2002)). Accordingly, we do not consider any evidence that was not in the record at the time of the trial court's December 13, 2024, denial of habeas corpus.

family members or friends who may be able to assist Hodges in posting bond. *See Reyes*, 653 S.W.3d at 282 (Tex. App.—Austin 2022, no pet.) (finding lack of specific and detailed evidence concerning the family's financial circumstances—such as family members' income or savings—could cause the trial court to conclude set bail amount was reasonable). Hodges argues that he was "homeless," but his mother testified that he simply decided to leave her house despite her objection and started living with his friend. Furthermore, Hodges's counsel argued in the application for writ of habeas corpus that $5,000 was reasonable and adequate to secure his presence, but at the habeas hearing, he requested Hodges's release on a personal recognizance bond despite the unavailability of such. *See* TEX. CODE CRIM. PROC. ANN. art. 17.03 (b-2) (1) (barring release on personal bond for offenses involving violence).

Hodges has also failed to show an unsuccessful attempt to furnish bail. There is nothing in the record supporting this contention. Additionally, it appears no assets of Hodges will be used to furnish bail—indicating that, even if his bail was posted, he may have little incentive to appear.

This factor weighs in favor of the trial court's denial of further bail reduction.

## C. Safety of the Victim and the Community

Hodges's mother stated that he could live with her. She lives four miles from Smiley, Texas, and twelve miles from Nixon, Texas. The victim lives in Nixon and goes to school in Smiley.[3] Additionally, it is uncertain if Hodges will stay with his mother or if

---

[3] We take judicial notice that Nixon-Smiley Elementary School is in Smiley. *See* TEX. R. EVID. 201 (a)–(d); *San Jacinto River Auth. v. Yollick*, 623 S.W.3d 454, 461 n.10 (Tex. App.—Beaumont 2021, no pet.) (taking judicial notice of geographical facts); *W. Hills Harbor Owners Ass'n v. Baker*, 516 S.W.3d 215, 219

his mother is capable of supervising him. He left her home before he finished high school, choosing instead to be "homeless."[4] The school counselor testified that Eva was "very anxious" for the first year after the alleged abuse occurred "because she really didn't fully understand what was going on." Eva would tell the counselor during counseling sessions that "[i]t's hard for me to think about what I had to tell you." Further, the trial court could have concluded the gravity and nature of the charges, as discussed above, indicate Hodges poses a danger to the community. *See Milner*, 263 S.W.3d at 151 (finding gravity and nature of charges impact the analysis under the safety to the community factor). This factor weighs heavily in favor of the trial court's denial of further bail reduction.

## D.     Community and Family Ties

Hodges failed to prove strong community and family ties. There is no evidence indicating the amount of time he has lived in the area. He does not depend on a local job for income. There is no evidence of any relatives living in the area other than his mother and sister who live four miles outside Smiley. And Hodges left his mother's house before he finished high school over her objection and argues he was "homeless." Thus, this factor weighs in favor of the trial court's denial of further bail reduction. *See Ex Parte Scott*, 122 S.W.3d 866, 871 (Tex. App.—Fort Worth 2003, no pet.) (finding minimal

---

(Tex. App.—El Paso 2017, no pet.) ("[A]n appellate court may take judicial notice of a fact for the first time on appeal of matters not contained within the appellate record."); *Griego v. State*, 345 S.W.3d 742, 747 n.5 (Tex. App.—Amarillo 2011, no pet.) (taking judicial notice of location, direction, and trajectories); *Tovar v. Bd. of Trustees of Somerset Indep. Sch. Dist.*, 994 S.W.2d 756, 762 (Tex. App.—Corpus Christi–Edinburg 1999, pet. denied) (finding courts may take judicial notice of address locations on streets by consulting maps).

[4] Again, according to Hodges's mother, he just moved in with a friend.

evidence on community ties could cause the trial court to conclude community ties were insufficient to assure appearance at trial).

**E.      Criminal History, Compliance with Bonds, Citizenship**

Despite Hodges carrying the burden of proof, he did not address these factors with evidence or argument. *See Gomez*, 624 S.W.3d at 576.  Thus, these factors weigh neither in favor nor against the trial court's denial of further bail reduction.

**F.      Summary**

Here, Hodges failed to satisfy his burden of proving his $100,000 bond is excessive by showing factors analyzed above weigh in his favor. *See Gomez*, 624 S.W.3d at 576; *see also Ex Parte Owen*, No. 10-16-00188-CR, 2016 WL 6953107, at *4 (Tex. App.—Waco Nov. 23, 2016, no pet.) (mem. op., not designated for publication) (affirming bail of $1,000,000 for an accused who was indigent for the purposes of court appointed counsel but was charged with a third degree felony enhanced to carry a punishment range of twenty-five to ninety-nine years or life imprisonment plus a fine of up to $10,000); *Ex Parte Campbell*, No. 02-13-00313-CR, 2013 WL 5041031, at *5 (Tex. App.—Fort Worth Sept. 12, 2013, no pet.) (mem. op., not designated for publication) (affirming a total bond of $3,000,000 where accused claimed indigence and was charged with three counts of aggravated sexual assault of child, one count of attempted aggravated sexual assault of a child, and one count of indecency with a child); *Ex Parte Flores*, No. 06-20-00124-CR, 2021 WL 744773, at *4 (Tex. App.—Texarkana Feb. 26, 2021, no pet.) (mem. op., not designated for publication) (affirming bond of $1,000,000 where accused was charged with aggravated sexual assault, a first degree felony); *O'Brien v. State*, No. 01-12-00176-

CR, 2012 WL 2922545, at *5 (Tex. App.—Houston [1st Dist.] July 5, 2012, no pet.) (mem. op., not designated for publication) (affirming bond of $750,000.00 where accused allegedly committed theft of property worth more than $200,000, a first degree felony).

Given the foregoing, we conclude that the trial court did not abuse its discretion. We reject Hodge's sole issue.

## IV. CONCLUSION

We affirm the trial court's judgment.

JON WEST
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed on the
14th day of August, 2025.